Washington Township Independent : 
School District, : 
               Petitioner : 
 : 
      v. : No. 2582 C.D. 2015 
 : Argued: December 14, 2016 
Pennsylvania State Board of : 
Education, : 
               Respondent : 


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge


**OPINION BY JUDGE BROBSON**         **FILED: January 20, 2017**


      The Washington Township Independent School District (WTISD) petitions for review of an order of the Pennsylvania State Board of Education (Board) that (1) disapproved the creation of WTISD and its transfer from the Dover Area School District (Dover) to the Northern York County School District (Northern York); and (2) accepted and adopted the report of the Special Committee of the State Board of Education (Committee). Following the Board's grant of WTISD's petition for reconsideration and the Board's subsequent affirmation of its earlier decision denying WTISD's application for transfer, WTISD filed the

petition for review at issue.  For the reasons set forth below, we vacate and remand for further proceedings.[1]

## I.  BACKGROUND

The Public School Code of 1949 (School Code)[2] provides a mechanism by which a majority of taxpayers within any contiguous geographic territory may petition the court of common pleas to establish their territory as an independent school district for purposes of transferring that territory from its current school district(s) to another already existing school district.  The administrative process for securing the transfer is a multi-step approval process involving the court of common pleas, the Secretary of Education (Secretary), and the Board.  This Court has characterized "[t]he establishment of an independent school district [as] procedurally unusual because it must be acted upon both by a court of common pleas and by state agencies." *In re Petition for Formation of Indep. Sch. Dist.*, 17 A.3d 977, 981 (Pa. Cmwlth. 2011) ("*Riegelsville II*").

The initial procedure is outlined in Section 242.1(a) of the School Code,[3] which, in relevant part, provides:

> A majority of the taxable inhabitants of any contiguous territory in any school district or school districts, . . . may present their petition to the court of common pleas of the county in which each contiguous territory, or a greater part thereof, is situated, asking that the territory be established as an independent district for the sole purpose of transfer to an adjacent school district contiguous thereto. . . . Such petitions shall set forth a

---

[1] Intervenor Northern York joined in the Board's brief.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 to 27-2702.

[3] Added by the Act of June 23, 1965, P.L. 139, 24 P.S. § 2-242.1(a).

> proper description of the boundaries of the territory to be included in such proposed independent district, and the reasons of the petitioners for requesting such transfer to another school district and the name of the district into which its territory is proposed to be placed.

Thereafter, Section 242.1(a) mandates that the court of common pleas hold a hearing on a petition "of which hearing the school district or districts out of whose territory such proposed independent district is to be taken and the school district into which the territory is proposed to be assigned, shall each have ten[-]days notice." Section 242.1(a) of the School Code.

In ruling on a petition, the court's role is strictly procedural, and it is not to inquire into petitioner's alleged reasons for the proposed transfer or rule on the merits of those reasons. *In re Indep. Sch. Dist.*, 74 A.3d 389, 391 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 321 (Pa. 2014) (*Jefferson Township*). At the mandatory hearing, the common pleas court is to determine four things: (1) the precise boundaries of the proposed district; (2) confirmation that a majority of taxable inhabitants in the contiguous territory have signed the petition; (3) confirmation that the petition includes petitioner's reasons for the transfer; and (4) confirmation that the petition includes the name of the school district into which the territory is proposed to be transferred. *Id*. at 391.

In addition, before approving the petition, the common pleas court must refer the petition to the Secretary for a determination of "the merits of the petition . . . from an educational standpoint." Section 242.1(a) of the School Code. The common pleas court may not approve a petition "unless approved" by the Secretary. *Id.* If the Secretary determines that the petition has merit, and the common pleas court determines that the petition meets the technical requirements above, the common pleas court must order the establishment of an independent

3

school district. In its order, or decree, the common pleas court must include a financial determination about the impact of the proposed transfer on the "receiving" and "losing" school districts. *Id.*

Once the common pleas court and Secretary approve the petition, the matter moves to the Board under Section 292.1 of the School Code,[4] which provides:

> When an independent district is created by the court of common pleas for purposes of transfer from one school district to another, the court shall submit to the State Board of Education its decree creating such district. *Such decree shall be considered an application for the assignment of said district to the designated administrative unit of the approved county plan.*

(Emphasis added.) The procedure for review and approval by the Board is set forth in Section 293.1 of the School Code,[5] which provides:

> When a court decree is received creating an independent district for transfer purposes, the State Board of Education shall place such item on its agenda and either approve or disapprove the creation and transfer. If approval is given, the [B]oard shall direct the Council of Basic Education to make the necessary changes [to] the county plan. If disapproved, the [B]oard shall state its reasons for such disapproval and the independent district shall be provided a hearing if it so desires.

In the present case, the Washington Township Education Coalition (WTEC) filed a July 2012 petition with the Court of Common Pleas of York County, requesting a transfer from Dover to Northern York and enumerating its reasons for asserting that the transfer had educational merit. In summary, WTEC's

---

[4] Added by the Act of June 23, 1965, P.L. 139, *as amended*, 24 P.S. § 2-292.1.

[5] Added by the Act of June 23, 1965, P.L. 139, *as amended*, 24 P.S. § 2-293.1.

4

alleged reasons were as follows: (1) Northern York students have better educational outcomes than Dover students; (2) Northern York is better managed; (3) an elementary school closure in Dover resulted in Washington Township students having to travel farther to school while living closer to schools that they would attend if they were part of Northern York; (4) Dover has a higher rate of in-school crime and arrests than Northern York; and (5) school taxes in Northern York are lower, more stable, and more fairly applied than those in Dover. (WTEC's July 16, 2012, Petition to Establish Independent School District for Transfer at 3-4; Certified Record (C.R.), Vol. 1 at 4a-5a.) After confirming that 1,406 of Washington Township's 1,929 taxable inhabitants had signed the petition, that the petition properly described the territory, and that it set forth WTEC's reasons for the requested transfer, the court referred the petition to the Secretary.

In evaluating the merits of the petition from an educational standpoint, the Secretary[6] considered the potential impact of the transfer on the Washington Township students, the students who would remain in Dover, and the students in Northern York. After comparing the respective schools' performances on certain educational metrics (SAT scores, proficiency in math and reading, graduation rates, drop-out rates, truancy rates, and in-school arrest rates), the Secretary concluded that Northern York outperformed Dover on each of the metrics. Ultimately determining that the proposed transfer would have a positive educational impact on the Washington Township students and that the parties had not presented sufficient evidence to demonstrate that the transfer would have a

---

[6] In July 2014, the Acting Secretary of Education was Dr. Carolyn Dumaresq. (January 14, 2015, Board Minutes at 1; C.R., Vol. 3 at 1702a.)

5

negative impact on the students who would remain in Dover or the students in Northern York, the Secretary deemed the petition meritorious from an educational standpoint. Accordingly, upon receipt of the Secretary's decision, the common pleas court entered an order, dated November 10, 2014, creating WTISD and transmitted the matter to the Board for review pursuant to Sections 292.1 and 293.1 of the School Code.

Upon receiving the common pleas court's decree, the Board published public notice of its receipt of the petition for transfer and advised the public of the opportunity to submit written petitions to intervene, notices of intervention or protest, and written requests for a public hearing on the petition. In response, Dover submitted a protest to the petition and requested a public hearing. In addition, Northern York, Dover Area Education Association,[7] and Keep Us in Dover Schools (KIDS),[8] submitted petitions to intervene to the Board. While Northern York remained neutral, both KIDS and the Dover Area Education Association aligned with Dover to oppose the transfer.

In January 2015, the Chairman of the Board, by resolution, appointed the Committee to conduct appropriate proceedings under the General Rules of Administrative Practice and Procedure (GRAPP)[9] and, upon completion, to make a recommendation as to whether the Board should approve or disapprove the creation and transfer of WTISD pursuant to Section 293.1 of the School Code.

---

[7] The Dover Area Education Association is the labor organization representing Dover's professional staff.

[8] KIDS is an unincorporated association comprised of members of the Dover community.

[9] 1 Pa. Code §§ 31.1 – 35.251.

Three Board members served on the Committee.[10]   Before rendering its recommendation, the Committee took care of preliminary matters such as granting Northern York's petition to intervene and authorizing the limited participation of the Dover Area Education Association and KIDS.[11]   In addition, the Committee and the parties engaged in a series of pre-hearing conference calls for purposes of creating a timeline and requirements for pre-hearing submissions.  In May 2015, the Committee met and formally adopted the pre-hearing record, which consisted of documents stipulated to by the parties and the Secretary's findings of fact and determination of educational merit.   Finally, the Committee held a multi-day hearing in June 2015.

At the hearing:  (1) WTISD presented evidence in favor of the transfer; (2) Dover, Dover Area Education Association, and KIDS presented evidence against the transfer; and (3) Northern York presented a brief statement regarding its ability to accommodate the Washington Township students.  After the evidentiary portion of the proceedings, members of the public were afforded the opportunity for public comment.  In September 2015, the Committee unanimously recommended that the Board disapprove the petition for the creation of WTISD and its transfer from Dover to Northern York.  Following an affirmative vote of the majority of its members, the Board adopted and accepted the Committee's recommendation and disapproved WTISD's petition.  WTISD then filed a petition

---

[10] June 3, 2015, Hearing, Notes of Testimony (N.T.) at 1; C.R., Vol. 3 at 1733a.

[11] Section 35.31(b) of GRAPP, 1 Pa. Code § 35.31(b), pertains to notice and actions on petitions to intervene.

for reconsideration, and thereafter, by final determination dated November 19, 2015, the Board confirmed its earlier decision.

By way of summary, the Board in disapproving the petition "did not find one district's educational program to be superior to the other's for the vast majority of the district's students." (Board's November 19, 2015, Decision on WTISD's Petition for Reconsideration at 10; C.R., Vol. 6 at 3635a.) Specifically, in deeming certain portions of the record more relevant and important to its decision, the Board in reviewing standardized test scores chose to place more emphasis on the School Performance Profile than on aggregate state assessment results alone. (*Id.* at 9-10; C.R., Vol. 6 at 3634a-35a.) In addition, the Board took into consideration "the variety of coursework available to students in each district, including foreign language and Advanced Placement offerings, and honors and technology education courses; opportunities for students to pursue postsecondary level coursework while in high school, and articulation agreements with postsecondary institutions; the delivery of Career and Technical Education; graduation rates; and drop-out rates." (*Id.* at 10; C.R., Vol. 6 at 3635a.) It also considered, *inter alia*, data that WTISD supplied depicting student/teacher ratios in the two districts. The Board, however, "did not find the differential between these measures to be significant in informing its decision." (*Id.*; C.R., Vol. 6 at 3635a.)

On appeal, WTISD has raised ten issues. For purposes of discussion and disposition, we have reordered, condensed and combined the cognizable issues as follows: (1) where the districts did not object to the Secretary's determination of educational merit, whether the Board was bound by that determination, obligated to consider the petition using the educational merit standard, and constrained to use the same measures of comparison that the Secretary deemed

8

relevant;[12] (2) whether the Board erred in appointing the Committee to conduct appropriate proceedings and, upon completion, to make a recommendation as to whether the Board should approve or disapprove the proposed creation and transfer; (3) whether the Board in rendering its decision actually reviewed the record in accordance with due process principles; (4) whether the Board erred in treating WTISD's request for a post-decisional evidentiary hearing before the full Board as a petition for reconsideration; and (5) whether the Board's fact-findings

---

[12] The Board maintains that WTISD waived this issue, *inter alia*, noting that WTISD's counsel in his closing argument agreed that the Board was not bound by the Secretary's determination and further asserting that counsel did not raise the issue until he made the following contention in WTISD's petition for reconsideration:  "The Board is bound by secretary's findings, both by the terms of the statute and by the failure of other parties to appeal." (WTISD's October 13, 2015, Petition for Reconsideration at 2; C.R., Vol. 6 at 3596a.)  After review, we reject the Board's contention that WTISD waived this issue.

While it is true that counsel for WTISD agreed that the Board was not bound by the Secretary's determination, his complete statement in that regard was as follows:  "You are not bound by the Secretary, *but you have to give her deference*, and find Dover will not suffer and, in fact, will suffer more if you don't grant the petition."  (June 4, 2015, Hearing, N.T. at 402; C.R., Vol. 3 at 2134a (emphasis added).)  We conclude, therefore, that WTISD preserved the issue on appeal.  In so determining, we note that review of this issue provides us with the opportunity to elucidate the respective roles of the Secretary and the Board in this "very important matter of how school district lines are drawn." *Riegelsville II*, 17 A.3d at 990; *see also Indep. Sch. Dist. Comprised of the W. Portion of Hamlin and Sergeant Twps.*, 417 A.2d 269, 272 (Pa. Cmwlth. 1980) *(Hamlin II)* (addressing procedural issues that court might not have been strictly obliged to consider, noting that procedure for determination of creation and transfer of independent school district at issue had been in dispute since before 1975 and citing Section 703(a) of the Administrative Agency Law (AAL), 2 Pa. C.S. § 703(a), providing, in pertinent part, that "[a] party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency . . . unless allowed by the court upon due cause shown.")

are supported by substantial evidence and whether it made any evidentiary or procedural errors.[13]

## II. DISCUSSION

We first address WTISD's contention that the Board improperly disregarded and/or deviated from the Secretary's determination of educational merit, erred in not considering the petition pursuant to that standard, and erred in not deeming relevant the same measures of comparison that the Secretary accorded weight. In clarifying the respective roles of the Secretary and the Board in this process, we are guided by the plain language of the pertinent provisions of the School Code and how they interplay to shape the respective roles of these designated educational authorities. In interpreting the statutes, we are mindful of the basic tenets of statutory construction that, where statutory language is unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921. In addition, a statutory provision shall not be construed so as to render an absurd or unreasonable result or inconsistently with the plain and ordinary meaning of the words at issue. *Phillips v. Zoning Hearing Bd. of Montour Twp.*, 776 A.2d 341, 343 (Pa. Cmwlth. 2001). When interpreting a statute, we must be mindful of both what the statute provides and what it *does not* provide. *Johnson v. Lansdale Borough*, 146 A.3d 696, 711 (Pa. 2016).

---

[13] Section 704 of the AAL, 2 Pa. C.S. § 704, which governs Commonwealth agency actions, restricts our review to determining whether constitutional rights have been violated, whether an error of law has been committed, whether the proceedings relating to practice and procedure before an agency have conformed to the Law and whether the necessary findings of fact are supported by substantial evidence.

We turn first to the Secretary's role. Section 242.1(a) of the School Code provides, in pertinent part, as follows:

> In all cases where an independent district is proposed for transfer from one school district to another, the merits of the petition for its creation, from an educational standpoint, shall be passed upon by the [Secretary] and the petition shall not be granted by the court unless approved by him.

Section 242.1(a) of the School Code further provides that "[t]he court of common pleas shall secure the reaction from the [Secretary] upon receipt of the petition properly filed." Even though the School Code neither defines the phrase "merits from an educational standpoint" nor any of the component words therein, the phrase is not vague, is not a technical term, and must be given its ordinary meaning. *Riegelsville II*, 17 A.3d at 985 n.10. Specifically regarding the scope and meaning of the Secretary's statutory authority to "pass" on the merits, we have held that his or her authority is not open-ended but instead restricted to the substantive provisions of the School Code. *Id*. at 991. Further, analogizing the Secretary's role to a veto power, *id*. at 982, we have held: "[W]hen the Secretary exercises his [or her] discretion to determine whether a proposed transfer has 'merit from an educational standpoint,' he [or she] must be guided by the policy choices made by the legislature in the [School Code] and not by his [or her] own personal sense of what constitutes good education policy." *Id*. at 991. This "manifest restriction" on the Secretary's power is "necessary lest the statute violate the proscription against delegating legislative power to an administrative agency." *Id*. at 988-89.

Furthermore, as we previously observed, if the Secretary does not approve the petition, then the common pleas court must deny it and the statutory process ends. If the Secretary approves the petition, then the common pleas court

11

must issue a decree establishing an independent school district for transfer purposes and transmit the same to the Board for the final step in the process. *Id*. at 981-82.

We now turn to the parameters of the Board's role. The General Assembly first added Sections 242.1, 292.1, and 293.1 to the School Code by Sections 1, 2, and 3, respectively, of the Act of June 23, 1965, P.L. 139. During this time, the Board was in the process of performing its statutory duties under the School Reorganization Act of 1963,[14] which, *inter alia*, added subarticle (i) titled "Reorganization" to Article II of the School Code.[15] The General Assembly enacted the School Reorganization Act of 1963 because it recognized that the existing system of more than 2,000 school districts in the Commonwealth was "incapable of providing adequate education and appropriate training for all of the children of the Commonwealth." Section 290 of the School Code; *see also Chartiers Valley Joint Schs. v. Cnty. Bd. of Sch. Dirs. of Allegheny Cnty.*, 211 A.2d 487 (Pa. 1965) (discussing purpose of School Reorganization Act of 1963 and upholding its constitutionality). In this regard, Section 290 of the School Code further provides:

> It is hereby declared to be the purpose and intention of the General Assembly to establish the procedures and provide for the standards and criteria under which school directors and district administrators and county boards of school directors and county administrators shall have the power and bear the duty of determining the appropriate administrative units to be created in each county to carry

---

[14] Act of August 8, 1963, P.L. 564.

[15] Subarticle (i) of Article II is set forth at Sections 290-298 of the School Code, *as amended*, 24 P.S. §§ 2-290 to 2-298.

12

out the responsibilities shared by them and the General Assembly, of educating and training each child within his capacity to the extent demanded by the immediate requirements of growth and strengthening of this Commonwealth and nation. Only where such local officials fail to act, or act arbitrarily outside of the standards and criteria provided for in the sections following, shall the Commonwealth through its duly authorized agencies and officials act to insure compliance with law *within the powers set forth below and as restricted therein*. The improvements in the educational system hereby obtained are not to be construed as a final resolution of organizational problems. Local school officials as agents of the General Assembly are directed to continually review organizational patterns and adopt without delay all changes which will accelerate the progress of public education. *It is further declared to be the purpose and intention of the General Assembly that the above may be used in construing and arriving at legislative intent with respect to the provisions of this subdivision.*

(Emphasis added.) According to the Pennsylvania Supreme Court, "the primary legislative objective" was "reorganization in the direction of fewer and larger units." *Chartiers Valley*, 211 A.2d at 494.[16]

To accomplish the purposes and goals of the School Reorganization Act of 1963, the General Assembly granted the Board certain powers and duties. First, the General Assembly mandated that the Board, by no later than July 1, 1965, develop statewide standards and procedures to evaluate objectively the performance (*i.e.*, adequacy and efficiency) of the educational programs of each public school in the Commonwealth. Section 290.1 of the School Code. Second, the General Assembly mandated that the Board, within 90 days of the

---

[16] Today, there are 500 public school districts in Pennsylvania.

13

effective date of the act,[17] develop standards for approval of administrative units, which, once approved, would become school districts. Sections 291, 296, 297 of the School Code. In establishing these standards, the General Assembly required the Board to consider "topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education." Section 291 of the School Code.

The School Reorganization Act of 1963 required county boards of school directors to prepare plans of organization for administrative units that complied with the Board's standards for approval, adopted pursuant to Section 291 of the School Code, on or before July 1, 1964, and to submit the same to what is now called the Department of Education. Section 292 of the School Code. The act provided for a review process for those county plans, which involved review by both the Department of Education and the Council of Basic Education (Council), but vested approval authority in the Council. Section 293 of the School Code. School districts aggrieved by a plan or organization approved by the Council could appeal that determination to the Board. Section 295 of the School Code.

In 1968, the General Assembly passed the School District Reorganization Act of 1968, Act of July 8, 1968, P.L. 299, 24 P.S. §§ 2400.1-.10, also referred to as Act 150. The General Assembly passed Act 150, a supplement to the School Reorganization Act of 1963, to facilitate completion of the orderly

---

[17] Section 17 of the School Reorganization Act of 1963 provided that the act was effective immediately upon passage.

reorganization of school districts required under the School Reorganization Act of 1963. *See Appeal of Borough of Cambridge Springs Sch. Dist.*, 275 A.2d 840 (Pa. Super. 1971) (en banc). The provisions of Act 150 are substantially similar to those in the School Reorganization Act of 1963, with one noteworthy change. In passing Act 150, the General Assembly removed the Council from the process, substituting the Board as the body with review and approval authority over plans for the organization of school districts. Section 3 of Act 150, 24 P.S. § 2400.3.

As noted above, in 1965 the General Assembly amended the School Code to add Sections 292.1 and 293.1 in order to provide additional authority to the Board with respect to the reorganization of school districts. These amendments to the School Code empower the Board to either "approve or disapprove the creation and transfer" of an independent school district. Section 293.1 of the School Code. Neither Section 292.1 nor 293.1 of the School Code set forth standards or factors that the Board should consider in this step of the approval process. As we recognized in *Riegelsville II* with respect to the Secretary's authority, however, the Board's authority is not open-ended, but instead restricted to the substantive provisions of the School Code, as supplemented by Act 150. *See Riegelsville II*, 17 A.3d at 991. Sections 292.1 and 293.1 of the School Code are part of a subdivision of the School Code dealing solely with school district reorganizations. As noted above, the General Assembly expressly stated in Section 290 of the School Code that the stated purposes and intentions of the General Assembly in passing the School Reorganization Act of 1963 "may be used in construing and arriving at legislative intent with respect to the provisions of this subdivision." Moreover, in determining the scope of the Board's approval authority, we consider the other portions of the School Code relating to the Board's

15

authority over the organization and reorganization of school districts. 1 Pa. C.S. § 1932 (providing that statutes and part of statutes relating to same things shall be construed together, if possible).

With this background and guidance, we conclude that the Board's authority under Section 293.1 of the School Code derives from and relates to the Board's authority to set standards for the approval of the organization of school districts in the Commonwealth under Section 292 of the School Code. The entirety of the "reorganization" subdivision of the School Code, as supplemented by Act 150, is devoted to providing procedures and standards for the creation of school districts. Today, we presume that Pennsylvania's existing 500 school districts are subject to these standards.

When it receives the trial court's decision creating an independent school district for transfer purposes, the Board is required to treat that decision as an application for the assignment of that independent school district to an existing school district. Section 292.1 of the School Code. In other words, the application is a request to the Board to redraw school district lines—*i.e.*, to amend an existing plan of organization. In evaluating that request, the Board is constrained to apply the standards for the creation and organization of school districts, those being the standards that the General Assembly directed the Board to develop in Section 291 of the School Code and Section 1 of Act 150. Both sections provide:

> The State Board of Education . . . shall adopt standards for approval of administrative units . . . taking into [account/consideration] the following factors: topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education.

16

Section 1 of Act 150; Section 291 of the School Code. The Board must also consider the following directive of the General Assembly, also found in both the School Code and Act 150:

> [N]o plan of organization of administrative units shall be approved in which any proposed school district contains a pupil population of less than four thousand (4,000), unless when factors of topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education are considered by the [Board] as requiring the approval of a plan of organization of administrative units in which one or more of the proposed school districts contains a pupil population of less than four thousand (4,000).

Section 3 of Act 150; Section 293(a) of the School Code.

The Board's scope of review under Section 293.1 of the School Code must be distinguished from the Secretary's "educational merits" review under Section 242.1 of the School Code. Under the latter, the Secretary is to evaluate only the educational merit *of the petition* to create an independent school district for transfer purposes. Under Section 293.1 of the School Code, and based on the standards set forth above, the Board is reviewing not the petition filed and approved by the Secretary and the common pleas court, but an application for assignment of the newly-created independent school district to the designated receiving school district, as set forth in the common pleas court's decree. It must look at the proposed amendment to the organizational plan and determine whether the assignment of the newly-created independent school district to the receiving district would violate the adopted Board standards or express statutory standards that govern the organization of school districts. If allowing the assignment would not violate these standards, then the Board should approve the amendment "and

17

direct the Council . . . to make the necessary changes [to] the county plan." Section 293.1 of the School Code. If approval of the application would be contrary to these standards, then the Board should deny the application.

In short, the Board's review is the third and final review in a three-part process to seek approval for the creation and transfer of an independent school district to another existing school district. Each step is an independent step, as failure to secure any one of the approvals from the common pleas court, the Secretary, and Board is fatal and would constitute a final order for purposes of appellate court review. *See Rieglesville II*, 17 A.3d at 980 (noting jurisdiction under the AAL, 2 Pa. C.S. §§ 501-508, 701-704, to hear appeal from trial court *denial* of petition based on negative educational merit determination by Secretary).[18] The common pleas court reviews the petition for completeness. The Secretary reviews the petition for educational merit. The Board reviews the common pleas court's decree as an application in order to determine whether assignment of the newly-created independent school district to the receiving district would violate standards for the organization of school districts adopted by the Board and established by statute.

Turning to the Board's decision on appeal, it is clear from reading both the initial written decision (September 17, 2015) and the written decision on

---

[18] The Board notes that in *Riegelsville II*, this Court characterized the power of the Secretary as "restricted" when compared to the Board's power. *See Riegelsville II*, 17 A.3d at 988. In doing so, the Court only pointed out, as set forth above, that the sole factor that the Secretary may consider when reviewing a petition under Section 242.1 of the School Code was educational merit, while the Board's authority to supervise the reorganization of school districts was broader. We did not, however, define in *Riegelsville II* the outward limits of the Board's authority. That issue was not before the Court in *Riegelsville II*, as it is here.

reconsideration (November 19, 2015) that the Board was operating under the false impression that its review in this matter was broad and virtually unlimited. The Board cites to no standards governing its review in either written decision. The Board's scope and standard of review should have been confined to determining whether assignment of WTISD to Northern York would result in a reorganization of school districts that violated statutory and Board-promulgated standards. Because the Board did not so confine its review, we must vacate the Board's decision and remand the matter to the Board for review and reconsideration under the proper scope and standard of review.[19]

WTISD's remaining issues on appeal relate to the process that the Board used in reviewing the application for assignment and alleged errors during the hearing below. Because of our decision to vacate and remand the Board's decision in this matter due to the Board's failure to adhere to the proper scope and standard of review, on remand the Board's process should begin anew. Accordingly, we need not address WTISD's remaining issues on appeal. Nonetheless, on remand, we instruct the Board to adhere to the statutory process set forth by the General Assembly.

---

[19] We acknowledge that there could be some overlap between the Secretary's educational merits review of WTEC's petition and the Board's review of the application for assignment of WTISD to Northern York, considering the Board's mandate to consider "the capability of providing a comprehensive program of education" in setting its standards for the organization of school districts. Section 291 of the School Code. Until the Board conducts a proper review of the application and issues an adjudication on grounds of disapproval, if any, concerns over conflicts or inconsistencies between the Secretary's decision and the Board's decision are speculative.

Specifically, on remand, the Board is directed to treat the common pleas court's November 10, 2014 "Order Establishing Independent School District for Purposes of Transfer Pursuant to 24 P.S. [§] 2-242.1" as an application for the assignment of WTISD to Northern York. Section 292.1 of the School Code. The Board shall place this item on the agenda for its next meeting, at which the Board must either vote to approve or disapprove the application. Section 293.1 of the School Code. As noted above, in rendering this preliminary decision, the Board must adhere to the proper scope and standard of review. If approved, the Board must direct the Council to make appropriate revisions to the school district lines. *Id.* If disapproved, the Board must give its reasons for the disapproval. *Id.* Thereafter, if requested by WTISD, the Board must hold a hearing confined to its reasons for disapproval and thereafter issue an adjudication that comports with the AAL.

Accordingly, we vacate and remand for further proceedings.

 

_____

P. KEVIN BROBSON, Judge

 

Judge Cohn Jubelirer did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Washington Township Independent School District, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2582 C.D. 2015 |
| | : | |
| Pennsylvania State Board of Education, | : | |
| Respondent | : | |

# O R D E R

AND NOW, this 20th day of January, 2017, the final order of the Pennsylvania State Board of Education is hereby VACATED and this matter is remanded to the Board for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge