# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph E. Archer, Nancy J. Bonati, Christopher : 
C. Bosworth, Deborah A. Bosworth, Belita J. : 
Brown, Stephen C. Brown, Deborah A. : 
Cunningham, Paul V. Cunningham, Candace : 
DiMarco, Ross F. DiMarco Jr., Janeen Dupre, : 
Karen A. Farmerie, Wilson J. Farmerie, David A. : 
Fetchko, Mary Ellen Fetchko, Clifford J. Forrest, : 
Tracy L. Forrest, Gary D. Gadley, Annette D. : 
Ganassi, Hemlock Property LLC, Georgia C. : 
Hernandez, Robert M. Hernandez, Martha E. : 
Hildebrandt, Mark J. Hileman, Rebecca L. Hileman, : 
James A. Nassif Qualified Personal Residence : 
Trust, Susan A. Jurik, Kurt J. Lesker III, William J. : 
Lloyd, David P. Mendis, Lisa B. Mendis, Joseph C. : 
Metzgar, Lynette E. Metzgar, Erin Morris, Michael A. : 
Morris, Netco Inc., Mary Jo Ochson, John C. : 
Prentice, Douglas Keith Rosetti, Ronald T. : 
Rossetti, Seven Springs Farm, Inc., Matthew : 
Tarosky, Three Rivers Enterprises Inc., David A. : 
Tonnies, Cynthia G. Urgo, Donald J. Urgo, Virginia's : 
Pheasant Run Limited Partnership, David A. : 
Webber, Lorie A. Webber, Harold Wiegel, Steven H. : 
Wiegel, James P. Wilhelm, Paige M. Wilhelm, : 
Jackie Wolfe, Jacquelyn K. Wolfe, Tim Wolfe, : 
and Timothy W. Wolfe, : 
                          Petitioners : 
                           : 
               v. : No. 133 C.D. 2020
                           : Argued: February 8, 2021
                           : 
Rockwood Area School District and Somerset Area : 
School District, : 
                        Respondents : 

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
                HONORABLE MARY HANNAH LEAVITT, Judge (P)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE LEAVITT                                    FILED: March 31, 2021

Petitioners own contiguous parcels of land located in the Somerset Area School District and seek to transfer this land to the Rockwood Area School District by establishing an independent school district. The Secretary of Education, Pedro A. Rivera, concluded that because no student resides in the proposed independent school district, the petition lacked merit from an educational standpoint. Accordingly, the Secretary did not evaluate the evidence presented in support of, and in opposition to, the petition. Petitioners assert that the Secretary erred because the Public School Code of 1949[1] does not require students to reside in the proposed independent school district as a condition precedent to the grant of a transfer petition. For the following reasons, we reverse the Secretary's adjudication and remand the matter for specific findings of fact and conclusions of law.

## Background

Petitioners own 22 acres of contiguous parcels of land in Jefferson Township that are assigned to the Somerset Area School District. Petitioners filed a petition with the Court of Common Pleas of Somerset County (trial court) to create an independent school district in order to have their land transferred from the Somerset Area School District to the Rockwood Area School District.

The petition offered six reasons for the transfer: (1) the schools in the Rockwood Area School District are closer to the proposed independent school district by at least six miles; (2) the land owned by Petitioner Seven Springs Farm, Inc., is divided between the Somerset and Rockwood Area School Districts; (3) the residential development known as Pheasant Run is divided between the Somerset

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101–27-2702.

and Rockwood Area School Districts; (4) Rockwood has a better student/teacher ratio; (5) Rockwood offers superior educational opportunities; and (6) Rockwood has a lower tax millage. Attached to the petition was a tax map identifying the territory proposed for the independent school district. Some of the parcels have not been developed, and some of the developed parcels are used as second homes.

Somerset Area School District opposed the petition, arguing that an insufficient number of "taxable inhabitants" had signed the petition because only two of the Petitioners had their permanent residence in the proposed independent school district. The trial court agreed that an "inhabitant" was a "permanent resident" and dismissed the petition. This Court reversed. *See In re Independent School District for Property Situate in Jefferson Township*, 74 A.3d 389 (Pa. Cmwlth. 2013) (*Jefferson Township*). Observing that "taxable inhabitants" had been expressly defined in precedent as persons that can "lawfully be taxed," this Court held that Petitioners were "taxable inhabitants" with standing to petition for the establishment of an independent school district. *Id.* at 396. The Court reasoned that had the legislature intended to limit standing to permanent residents or legally domiciled persons, it would have so stated. *Id*.

After the Pennsylvania Supreme Court denied Somerset Area School District's petition for allowance of appeal, *In re Independent School District for Property Situate in Jefferson Township,* 87 A.3d 321 (Pa. 2014), the trial court entered an order directing the Secretary to determine whether the petition has merit from an educational standpoint.

**Pre-Adjudication Determination**

On April 22, 2014, the Department of Education forwarded an Educational Impact Projection Questionnaire to both the Somerset and Rockwood

Area School Districts, requesting extensive information about each school district. The Questionnaire sought a summary of each district's academic results and educational outcomes in prior years, including SAT/ACT scores and Pennsylvania System of School Assessment (PSSA) test[2] scores, as well as information about the impact of the proposed transfer on educational opportunities, instructional programs, organization/staff, facilities, special education and transportation. The Questionnaire sought information about the number of students that would be transferred.

Somerset Area School District responded that it has 2,263 enrolled students. Because most of the homes in the proposed independent school district are vacation homes, no school-aged children live there. Further, Somerset's records did not show that enrolled students had ever lived there. Somerset stated that the transfer would cause a loss of revenue that could adversely affect its pre-kindergarten program; the enrollment of its students in the Somerset County Technology Center; and its music and art programs. In the event of a transfer, Rockwood Area School District would have to assume some of Somerset's debt, which could have a negative financial effect on Rockwood.

Rockwood Area School District responded that it has 729 enrolled students and 23 nonpublic students. A transfer would have a minimal educational impact, but with the increase in tax revenue, Rockwood would be able to expand educational opportunities for its students.

---

[2] The PSSA test is "[a] test developed and implemented by the Department of Education to determine only academic achievement relating to objective academic standards in the areas of reading, writing, mathematics and science[.]" Section 102 of the Public School Code of 1949, 24 P.S. §1-102.

3

The matter was assigned to Deputy Secretary Matthew S. Stem for a determination. He decided that a "central consideration in evaluating educational merit is whether the proposed transfer is beneficial for students." Deputy Secretary Determination, 12/11/2018, at 22. Because no students resided in the proposed independent school district, he concluded that it was impossible to evaluate the educational merit of the proposed transfer. The Deputy Secretary dismissed Petitioners' assertion that the proposed transfer may induce families with school age children to reside in the proposed independent school district as "conjectural and unsubstantiated." *Id*. at 25. The Deputy Secretary explained that

> [t]he *legislature clearly envisioned a mechanism to create independent school districts predicated upon an existing student population* that would both educationally benefit from a newly created independent school district and support the arrangement.... Transferring a territory that is currently devoid of students, and significantly, never had any students residing within its boundaries and which lacks convincing evidence that any students may reside there in the future and enroll in the receiving school district, is not aligned with the statutory intent of the law.

*Id*. (emphasis added). In the absence of "an existing student population" in the proposed independent school district, the Deputy Secretary held that the petition lacked educational merit. *Id.*

### Hearing and Adjudication

Petitioners requested a formal administrative hearing to challenge the Deputy Secretary's decision. The Secretary appointed a hearing officer, who conducted a hearing on August 1, 2019, in which Petitioners and the Somerset Area School District participated. They presented a joint stipulation of facts and exhibits, as well as witness testimony.

4

The parties stipulated to the following. Based on three different bus stops, travel to Rockwood schools from the proposed independent school district would be shorter by 10.9 to 19.6 miles. Stipulation ¶9. From 2011 to 2019, student enrollment in both school districts declined. *Id.* ¶¶11-12. Somerset reduced its administrative staff by one employee; Rockwood did not. *Id.* ¶¶15-16. During that period, Rockwood's tax millage was 21.89, and Somerset's increased from 37.96 to 41.70. *Id.* ¶¶5-6. In 2012, the student/teacher ratio in Rockwood was 13-1, and 14-1 at Somerset. *Id.* ¶10. The District Report Cards for the 2010-2011 school year showed that, in math and reading, Rockwood students performed better. *Id.* ¶7, Ex. E. The territory proposed for the independent school district is a small part of Jefferson Township that is contiguous to Rockwood. *Id.* ¶4, Ex. D. The Pheasant Run development is taxed by both districts. *Id.* ¶¶17-18, Ex. F, G. Seven Springs Farm, Inc., is divided between Rockwood and Somerset, with the majority of its land in Rockwood. *Id.* ¶19.

Petitioners presented the testimony of Annette D. Ganassi, one of the Petitioners and a real estate agent. She testified that prospective home buyers routinely consider the school district where the home is located, including the proximity of schools and the school district's ratings. They also consider the real estate taxes imposed by the school district.

Ganassi resides in the Pheasant Run development, which is located in both Middlecreek Township and Jefferson Township. She testified that "one living in Pheasant Run could literally be across the street from someone who is in a different school district[.]" Hearing Transcript, 8/1/2019, at 5 (H.T. __). Based on her experience as a real estate agent selling properties in Pheasant Run, a family with

5

children is more likely to choose a lot in Pheasant Run that is located in the Rockwood Area School District.

Somerset Area School District presented the testimony of Krista Suzanne Mathias, the district superintendent. Mathias opined that "in many ways, Rockwood is very comparable to Somerset." H.T. 18. In support, she testified about the 2018 Pennsylvania Future Ready Index comparison on the Department's website. It showed that the number of students ranked advanced or proficient in language arts tests was 75.3 percent for Somerset and 79 percent for Rockwood. For math, the percentage of those ranked advanced or proficient was 56.5 percent for Somerset and 60.3 percent for Rockwood. In science and biology, the percentage of students ranked advanced or proficient was 70.7 percent for Somerset and 76.1 percent for Rockwood. PVAAS[3] data, which measures student improvement, showed that in language arts and literature, 93.5 percent of Somerset students and 70 percent of Rockwood students met annual growth expectations. In math and Algebra 1, 83.5 percent of Somerset students met growth expectations, and 52 percent of Rockwood's students did so. In science and biology, 90.5 percent of

---

[3] "PVAAS" stands for the Pennsylvania Value-Added Assessment System. A value-added assessment system is defined as "a statistical analysis of results on the [PSSA] test or any other test established by the State Board of Education to meet the requirements of section 2603-B(d)(10)(i) pursuant to 22 Pa. Code §403.3 (relating to single accountability system) that uses measures of student learning to enable the estimation of school or school district statistical distributions." Section 221 of the Public School Code of 1949, added by the Act of November 17, 2010, P.L. 996, 24 P.S. §2-221.

The Department's website, "What Should You Know About PVAAS," available at https://www.education.pa.gov/K-12/Assessment%20and%20Accountability/PVAAS/Pages/default.aspx (last visited 3/30/2021), explains that PVAAs is "used to measure a district's, school's or teacher's influence on the academic progress rates of groups of students from year to year." *Id*.

Somerset students met growth expectations, and 60.5 percent of Rockwood students did so.

Regarding transportation, Mathias testified that the longest bus ride for any student in the Somerset Area School District is 50 minutes; the typical ride is closer to 30 minutes. Mathias testified that busing is not relevant to the educational merit inquiry because, in her opinion, "[t]ime on a bus has nothing to do with what happens during the school day when the child is in school." H.T. 23. Nevertheless, Mathias acknowledged that students that had to travel longer to school would have to awaken earlier, leaving them more tired at the end of the day.

The Secretary adopted the Deputy Secretary's determination as his adjudication. The Secretary rejected Petitioners' contention that the Deputy Secretary added words to Section 242.1 of the Public School Code of 1949[4] by requiring school-aged children to reside in the proposed independent school district. The Secretary explained:

> *Lacking evidence of any tangible positive impact on any actual or reasonably anticipated students in the territory, the educational benefits of the [p]etition fail as pure speculation.* As the Deputy Secretary noted, in this case not only is there no evidence that school aged students ever resided in the territory[,] there is no material evidence that would suggest that this territory is likely to soon have any students.[]

Accordingly, the Secretary declined to evaluate the evidence. Secretary Adjudication, 12/13/2019, at 4-5 (footnotes and citation omitted, emphasis added). Thus, the Secretary held that the petition to create an independent school district lacked merit from an educational standpoint.

---

[4] Added by the Act of June 23, 1965, P.L. 139, 24 P.S. §2-242.1.

Petitioners petitioned this Court for review.[5]

**Appeal**

Petitioners assert that the Secretary erred by holding that their petition lacked merit from an educational standpoint. In *In re Petition for Formation of Independent School District*, 17 A.3d 977, 990-91 (Pa. Cmwlth. 2011) (*Riegelsville II*), this Court summarized the factors that, historically, have been held to constitute educational merit: a reduction in student travel time; better academic results; and better school district management. Although Petitioners' evidence addressed all of those factors, the Secretary refused to evaluate it for the stated reason that no students reside in the proposed independent school district. Petitioners argue that the Public School Code of 1949 does not require an "existing student population" in the proposed independent school district in order for a petition to have educational merit. The Secretary added language to Section 242.1 of the Public School Code of 1949, 24 P.S. §2-242.1, which constitutes reversible error.

For its part, Somerset Area School District requests the Court to affirm the Secretary's adjudication. It contends that Petitioners did not undertake a meaningful comparative analysis of the education provided to students at the two school districts. It further contends that this meaningful comparative analysis requires expert testimony.

**Analysis**

Section 242.1 of the Public School Code of 1949 authorizes the

---

[5] This Court's review determines whether constitutional rights have been violated, whether the adjudication is in accordance with the law, whether the proceedings relating to practice and procedure before an agency were violated, and whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. §704; *In re Petition for Formation of Independent School District Consisting of Borough of Highspire*, 228 A.3d 584, 589 n.4 (Pa. Cmwlth. 2020) (*Borough of Highspire*).

8

"[e]stablishment of independent districts for transfer of territory to another school district." 24 P.S. §2-242.1. Subsection (a) sets forth the procedures for transfer and states, in relevant part, as follows:

> (a) A majority of the taxable inhabitants of any contiguous territory in any school district or school districts ... may present their petition to the court of common pleas ... asking that the territory be established as an independent district for the sole purpose of transfer to an adjacent school district contiguous thereto .... *Such petitions shall* set forth a proper description of the boundaries of the territory to be included in such proposed independent district, *and the reasons of the petitioners for requesting such transfer to another school district* and the name of the district into which its territory is proposed to be placed.
>
> The court shall hold hearing thereon .... In all cases where an independent district is proposed for transfer from one school district to another, *the merits of the petition for its creation, from an educational standpoint, shall be passed upon the [Secretary of Education]* and the petition shall not be granted by the court unless approved by him. The court of common pleas shall secure the reaction from the [Secretary of Education] upon receipt of the petition properly filed.
>
> The court, in its decree establishing such independent district for transfer purposes, shall also determine the amount, if any, of the indebtedness and obligations of the school district, from whose territory such independent district is taken, that said district shall assume and pay, and, a statement prorating the State subsidies payable between or among the losing district or districts and the receiving district.

24 P.S. §2-242.1(a) (emphasis added). To establish an independent school district requires action by a court of common pleas and two state agencies. *Riegelsville II*, 17 A.3d at 981. This Court has summarized the process as follows:

> The common pleas court reviews the petition for completeness. The Secretary reviews the petition for educational merit. The

9

> [State Board of Education] reviews the common pleas court's decree as an application in order to determine whether assignment of the newly-created independent school district to the receiving school district would violate standards for the organization of school districts adopted by the Board and established by statute.

*Washington Township Independent School District v. Pennsylvania State Board of Education*, 153 A.3d 1177, 1188 (Pa. Cmwlth. 2017). Failure to secure any one of the three approvals is "fatal" and constitutes "a final order for purposes of appellate court review." *Id*.

Here, the Secretary held that the absence of any students residing in the territory proposed for the independent school district was fatal to Petitioners' petition. Petitioners argue that "none of the appellate cases" make an existing student population a requirement. Petitioners' Brief at 12. Petitioners presented evidence on school proximity, academic results, school management, and tax millages, all of which have been held relevant to educational merit in those appellate cases. Petitioners contend that the Secretary's holding cannot be reconciled with Section 242.1 of the Public School Code of 1949, 24 P.S. §2-242.1.

Section 242.1(a) contains a detailed list of what must be contained in a petition to establish an independent school district.[6] The petition must contain: (1) the boundaries of the proposed independent school district; (2) a verification that a majority of "taxable inhabitants" in the "contiguous territory" agree to the transfer; (3) the reasons for the transfer; and (4) an identification of the school district to be

---

[6] The best indication of the legislature's intent is the language employed in the statute. 1 Pa. C.S. §1921(b) (where a statute is unambiguous "the letter of it is not to be disregarded under the pretext of pursuing its spirit"). Additionally, when construing the Public School Code of 1949, "*we must be mindful of both what the statute provides and what it does not provide*." *Washington Township*, 153 A.3d at 1184 (emphasis in original and added, citation omitted).

10

joined. 24 P.S. §2-242.1(a). *See also Jefferson Township*, 74 A.3d at 391 (citing *Riegelsville II*, 17 A.3d at 981). This list does not include a statement that students currently reside in the independent school district. Likewise, it does not require any information about the number of students that may be affected or how a transfer would benefit them.

Section 242.1(a) requires the Secretary to consider the "*merits of the petition*" from an "educational standpoint." 24 P.S. §2-242.1(a) (emphasis added). In *In re Weaverland Independent School District*, 106 A.2d 812, 813-14 (Pa. 1954), the phrase "merits … from an educational standpoint" was challenged as vague and an impermissible delegation of legislative power. Acknowledging that a statute must prescribe "with reasonable clarity the limits of power delegated," the Supreme Court held that "educational merit" met that clarity standard. *Id*. at 814 (quotation omitted). It held that "educational merit" referred to "school considerations," giving the phrase "educational merit" its "ordinary meaning." *Id*. at 814-15. Specifically, the review requires the Secretary to determine whether "the establishment of a proposed independent school district will advance or hinder the educational facilities in the designated area." *Id*. at 815.

This Court has explained that the term "educational" means "of, relating to, or concerned with education or the field of education" and "[s]erving to further education." *Borough of Highspire*, 228 A.3d at 593 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 723 (2002)). The term "education" refers to a course of study, learning, instruction, and training. *Id*. These are abstract precepts.

It is "error to add words to a statute not chosen by the legislature." *Riegelsville II*, 17 A.3d at 986 (citing *Vlasic Farms, Inc. v. Pennsylvania Labor*

11

*Relations Board*, 734 A.2d 487, 490 (Pa. Cmwlth. 1999)). The Secretary's analysis of educational merit must be done without regard to a discrete student population. Indeed, any student population changes over the course of years, as students move in or out of the district or graduate. It is noteworthy that it took the Secretary five years to make a determination on the educational merit of the proposed independent school district.

The Secretary's conclusion is also inconsistent with this Court's holding that standing to file a transfer petition is based upon liability for real estate taxes, not upon parenthood or residency. *Jefferson Township*, 74 A.3d at 396-97. A petition for an independent school district transfers territory from one school district to another, *Riegelsville II*, 17 A.3d at 988; it does not transfer people.

We hold that the Secretary erred. A petition for the establishment of an independent school district does not require that students presently reside in the proposed independent school district in order for the petition to undergo an evaluation for merit from an educational standpoint. Section 242.1(a) of the Public School Code of 1949 has not predicated such petitions upon an existing student population, as recited by the Deputy Secretary and adopted by the Secretary.

Merit from an educational standpoint begins with "school considerations." *In re Weaverland*, 106 A.2d at 814. We have held that "school considerations" includes the proximity of schools to the proposed independent school district. *Riegelsville II*, 17 A.3d at 990-91. It also includes consideration of the educational outcomes of each district. *Id.* There is no requirement that a petition involve an exit from a severely deficient school district in order to show educational merit.

12

The parties dispute the value of the evidence Petitioners presented. Nevertheless, there is a record that addresses relevant factors: school proximity, school district management, and educational outcomes. *See Riegelsville II*, 17 A.3d at 990-91. Further, the parties stipulated to facts upon which Petitioners rely to support their reasons, and these facts are "binding." *Spencer v. City of Reading Charter Board*, 97 A.3d 834, 843 (Pa. Cmwlth. 2014).

The Stipulation established that Rockwood schools are significantly closer to the proposed independent school district than Somerset schools. Stipulation ¶9. A reduction in students' travel time has been held to demonstrate educational merit. *See, e.g.*, *In re Establishment of Independent School District Consisting of Western Portions of Hamlin and Sergeant Townships*, 349 A.2d 480, 481-83 (Pa. Cmwlth. 1975); *In re Establishment of an Independent School District Consisting of Brady Township*, 630 A.2d 537, 538-40 (Pa. Cmwlth. 1993).

The Stipulation established that Rockwood has a better student/teacher ratio; lower tax millage rates; and fewer administrators. Stipulation ¶¶5-6, 10-11, 15-16. Petitioners argue that these facts demonstrate that Rockwood is better managed. They explain that both districts experienced a decline in enrollment from 2011 to 2019;

> [h]owever, during that time Somerset increased its taxes by 2.2 mills yet Rockwood's taxes did not increase. It is suggested that these facts exhibit better management in Rockwood than in Somerset. *Fewer students and thus fewer teachers should result in some reduction in expense yet Somerset still increased their taxes.* This appears to indicate that Rockwood was better able to operate its district.

Petitioners' Brief at 11 (emphasis added). Better management has been held to demonstrate educational merit. *Brady Township*, 630 A.2d at 538, n.2.

13

The Stipulation established that Rockwood students scored better than Somerset students over a period of seven years. Stipulation ¶7, Ex. E. Section 220 of the Public School Code of 1949 requires the District Report Cards to provide the public with performance information. 24 P.S. §2-220.[7] The Public School Code of 1949 makes district performance a factor in the evaluation of educational merit. *Riegelsville II*, 17 A.3d at 991.

The Stipulation established that from 2011 through 2019, Rockwood's tax millage was 21.89, while Somerset's increased from 39.5 to 41.7. Stipulation ¶¶5-6. A transfer petition cannot rely on tax considerations alone without also establishing educational merit. *Riegelsville II*, 17 A.3d at 990. Nevertheless, tax considerations are relevant. *Id.*

The Stipulation established that Seven Springs Farm, Inc., and the Pheasant Run development are divided between Jefferson Township and Middlecreek Township. Rather than consider the effect of this division upon "a community of interest," the Secretary observed that a transfer would "appear" to

---

[7] Section 220 was added by the Act of December 9, 2002, P.L. 1317, 24 P.S. §2-220. It states, in relevant part, that the Department "shall create a State Report Card based on the information" provided therein, which shall include:

> (i) Information regarding the number of schools and school districts that have achieved adequate yearly progress and the number of schools and school districts that have not achieved adequate yearly progress.
> (ii) Information regarding the number of schools and school districts that have achieved each academic performance target and the number of schools and school districts that have not achieved each academic performance target.

24 P.S. §2-220(a)(2)(i), (ii). The District Report Cards are designed to provide students, parents, educators, and citizens with an understanding of student and school performance consistent with federal law, specifically, the No Child Left Behind Act of 2001, 20 U.S.C. §§6301-7941. *See* 22 Pa. Code §4.51(a)(1).

offend the preference in the Public School Code of 1949 to keep municipalities in the same school district. Section 2-201 states that

> [a]ll school districts shall remain as now constituted *until changed as authorized by this act*. Except as otherwise now or hereafter constituted, each city, incorporated town, borough, or township in this Commonwealth, now existing or hereafter created, shall constitute a separate school district….

24 P.S. §2-201(emphasis added). This Court has construed Section 201 to express a legislative preference that "students in a particular borough should attend the same schools." *In re Petition for Formation of Independent School District*, 962 A.2d 24, 26 n.3 (Pa. Cmwlth. 2008) (*Riegelsville I*). However, this preference may be offset where, as here, houses in the same residential community are assigned to different districts. A single parcel, Seven Springs Farm, Inc., is similarly divided. The Public School Code of 1949 does not require a slavish adherence to municipal boundaries; rather, it expresses a preference that students with the same community of interest should attend the same schools.

The Secretary refused to evaluate either the stipulated facts or hearing testimony because they did not relate to "any actual or reasonably anticipated students in the territory." Secretary Adjudication, 12/13/2019, at 4.[8] Instead, the Secretary held that the evidence was "*not capable of evaluation* in this case considering the lack of students or prospective students in the territory[.]" *Id*. at 4-

---

[8] In prior cases, this Court, has considered the effects of the proposed transfer on students residing in the territory proposed to be transferred as well as the effects of the transfer on students in the receiving district. *See, e.g.*, *Washington Township*, 153 A.3d at 1181; *Borough of Highspire*, 228 A.3d at 586; and *Riegelsville II*, 17 A.3d at 979. These cases did not, however, establish the principle that a territory cannot be moved from one school district to another unless school-aged children reside in the territory.

15

5.[9]  The Secretary erred by refusing to carry out his statutory duty under Section 242.1(a) of the Public School Code of 1949, 24 P.S. §242.1, to determine whether the proposed independent school district has merit from an educational standpoint.

**Conclusion**

The Secretary erred in refusing to evaluate Petitioners' evidence for the sole reason that school-aged children did not reside in the proposed independent school district when Petitioners filed their petition.  The Public School Code of 1949 does not require that students presently reside in a proposed independent school district.  Accordingly, we reverse the Secretary's adjudication and remand the matter to the Secretary to evaluate all of the evidence against the factors that, according to precedent, have been held to demonstrate merit from an educational standpoint.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[9] The Secretary cannot know if or when there will be students in the proposed independent school districts.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph E. Archer, Nancy J. Bonati, Christopher   :
C. Bosworth, Deborah A. Bosworth, Belita J.   :
Brown, Stephen C. Brown, Deborah A.   :
Cunningham, Paul V. Cunningham, Candace   :
DiMarco, Ross F. DiMarco Jr., Janeen Dupre,   :
Karen A. Farmerie, Wilson J. Farmerie, David A.   :
Fetchko, Mary Ellen Fetchko, Clifford J. Forrest,   :
Tracy L. Forrest, Gary D. Gadley, Annette D.   :
Ganassi, Hemlock Property LLC, Georgia C.   :
Hernandez, Robert M. Hernandez, Martha E.   :
Hildebrandt, Mark J. Hileman, Rebecca L. Hileman,   :
James A. Nassif Qualified Personal Residence   :
Trust, Susan A. Jurik, Kurt J. Lesker III, William J.   :
Lloyd, David P. Mendis, Lisa B. Mendis, Joseph C.   :
Metzgar, Lynette E. Metzgar, Erin Morris, Michael A. :
Morris, Netco Inc., Mary Jo Ochson, John C.   :
Prentice, Douglas Keith Rosetti, Ronald T.   :
Rossetti, Seven Springs Farm, Inc., Matthew   :
Tarosky, Three Rivers Enterprises Inc., David A.   :
Tonnies, Cynthia G. Urgo, Donald J. Urgo, Virginia's :
Pheasant Run Limited Partnership, David A.   :
Webber, Lorie A. Webber, Harold Wiegel, Steven H. :
Wiegel, James P. Wilhelm, Paige M. Wilhelm,   :
Jackie Wolfe, Jacquelyn K. Wolfe, Tim Wolfe,   :
and Timothy W. Wolfe,   :
                Petitioners   :
   :
      v.                  : No. 133 C.D. 2020
   :
Rockwood Area School District and Somerset Area   :
School District,   :
                Respondents   :

## ORDER

AND NOW, this 31st day of March, 2021, the adjudication of the Secretary of Education dated December 13, 2019, is hereby REVERSED. This

matter is REMANDED to the Secretary for further proceedings in accordance with the accompanying opinion.

Jurisdiction relinquished.

_____

MARY HANNAH LEAVITT, President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph E. Archer, Nancy J. Bonati, Christopher :
C. Bosworth, Deborah A. Bosworth, Belita J. :
Brown, Stephen C. Brown, Deborah A. :
Cunningham, Paul V. Cunningham, Candace :
DiMarco, Ross F. DiMarco Jr., Janeen Dupre, :
Karen A. Farmerie, Wilson J. Farmerie, David A. :
Fetchko, Mary Ellen Fetchko, Clifford J. Forrest, :
Tracy L. Forrest, Gary D. Gadley, Annette D. :
Ganassi, Hemlock Property LLC, Georgia C. :
Hernandez, Robert M. Hernandez, Martha E. :
Hildebrandt, Mark J. Hileman, Rebecca L. Hileman, :
James A. Nassif Qualified Personal Residence :
Trust, Susan A. Jurik, Kurt J. Lesker III, William J. :
Lloyd, David P. Mendis, Lisa B. Mendis, Joseph C. :
Metzgar, Lynette E. Metzgar, Erin Morris, Michael :
A. Morris, Netco Inc., Mary Jo Ochson, John C. :
Prentice, Douglas Keith Rosetti, Ronald T. Rossetti, :
Seven Springs Farm, Inc., Matthew Tarosky, :
Three Rivers Enterprises Inc., David A. Tonnies, :
Cynthia G. Urgo, Donald J. Urgo, Virginia's :
Pheasant Run Limited Partnership, David A. :
Webber, Lorie A. Webber, Harold Wiegel, Steven :
H. Wiegel, James P. Wilhelm, Paige M. Wilhelm, :
Jackie Wolfe, Jacquelyn K. Wolfe, Tim Wolfe, and :
Timothy W. Wolfe, :
                        Petitioners :
                         :
             v. : No. 133 C.D. 2020
                      : ARGUED: February 8, 2021
Rockwood Area School District and Somerset :
Area School District, :
                  Respondents :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
             HONORABLE MARY HANNAH LEAVITT, Judge (P)
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**DISSENTING OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: March 31, 2021**

I respectfully dissent. I fully agree with the majority that the absence of school-aged students in an area for which a district transfer is proposed does not, in and of itself, bar the transfer or automatically mean that there can be no educational merit to the transfer. However, I disagree that the Secretary of Education based his decision on any such conclusion. In discussing his agreement with the recommendation of the hearing examiner, he stated, "I do not believe the Deputy Secretary imposed a specific requirement that there be school age students to approve the Petition." (Sec'y's Op. at p.4.) Rather, he found that under the highly unusual circumstances here, evidence regarding the traditional factors would be too speculative to form the basis of a conclusion regarding educational merit. I would affirm the Secretary's analysis in this case.

Here, not only are there no students in the area covered by the Petition, there is no evidence that there ever were any, and there is no evidence of likelihood that there will be any in the foreseeable future. There are, in fact, only eight full-time residents, plus a handful of vacation homes and the Seven Springs resort. Not knowing when or where students might reside in the future, or what schools may by then be built, makes the potential travel times to schools highly speculative. Likewise, the current indicia of academic performance and school district management may or may not be the same or even similar in that possibly distant time.

Petitioning property owners plainly have no legitimate interest in the educational value of the school district in which their property sits. Rather, it would seem abundantly clear that their sole interest is in reducing their property taxes. If ordinary principles of standing were at issue here, they would have none. I consider filing a transfer petition for such a reason to be an abuse of the process, and I would affirm the Secretary's denial of the Petition.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita