## Weaverland Independent School District Case.

Argued April 19, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Stanley Folz,* with him *K. L. Shirk, Jr., K. L. Shirk, Sr.* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellant.

*Robert Ruppin,* with him *Thomas H. Wentz,* for appellee.

OPINION BY MR. JUSTICE JONES, June 28, 1954:

The appellant was one of a large number of signers of a petition to the court below for the establishment of an independent school district. The petition was filed in accordance with the procedure prescribed by the Public School Code of 1949, P. L. 30, 24 PS §§2-241 and 2-242. Section 242 requires the approval of such a petition by the Superintendent of Public Instruction as a condition precedent to the creation of a fourth class school district which the proposed district (hav-

ing a population of 1349) would have been if created.[1] The Superintendent of Public Instruction disapproved the petition, and the court below subsequently dismissed it. The appellant brings the case here, contending that Section 242 of the Code is unconstitutional in so far as it makes the Superintendent's disapproval of such a petition determinative of the relief sought. The material facts are as follows.

A majority of the taxable inhabitants of a specifically described contiguous territory located entirely within East Earl Township School District, Lancaster County, petitioned the court below for the establishment of the described area as an independent school district. The petition averred that the creation of such a school district "would be of advantage to the pupils in the proposed new school district and an advantage to the pupils in the remaining part of East Earl Township, as well as an advantage to the residents and people of the proposed new school district, and of the remainder of East Earl Township." No answer was filed, but, on the day scheduled for a hearing on the petition, the directors of East Earl Township School District and the then projected Eastern Lancaster County Joint School Authority appeared in opposition to the establishment of the independent school district.

It is undisputed that the population of the proposed school district is 1349; that of this number 573 are taxables, 487 of whom signed the petition; that within the proposed district there are 7 one-room schools with an aggregate enrollment of 256 pupils in grades 1 to 9, inclusive (for an average of 36 plus

---

[1] Section 202 of the Public School Code provides that "Each school district having a population of less than five thousand (5,000), shall be a school district of the fourth class."

pupils per room) ; that the proposed district comprises the northern half of East Earl Township and, in the main, is composed of farms; that the southern half of the township is also largely farm land; and that the assessed valuation of the real estate in the proposed district ($938,975) is slightly less than half the assessed valuation of the entire township.

After hearing testimony, the court found that, although the petitioners were conscientiously opposed to sending their children to a joint high school and that classroom crowding could more quickly be remedied by an independent school district than by the proposed jointure,[2] nevertheless, "the creation of the proposed independent school district would be detrimental to the rest of the school district by cutting the district practically in half, and thereby cutting the assessed valuation in half, and destroy the agreement for jointure . . . ." The court noted that the Code required it, in passing upon a petition for the creation of an independent school district, to consider the welfare of the pupils and the taxpayers in the proposed as well as the parent school district and concluded that "It is self-evident that the welfare of the pupils and taxpayers in the remaining territory would be adversely affected by the separation. As already stated, the establishment of the consolidated school would be delayed." It is unnecessary, however, to consider the court's conclusions in this connection since the establishment of the proposed school district was disapproved by the Superintendent of Public Instruction, which injects the question here involved.

---

[2] The School Districts of East Earl, Earl, Caernavon and Brecknock Townships and Terre Hill Borough had entered into a jointure agreement for the purpose of establishing and maintaining a joint junior-senior high school to which the constituent school districts would send their pupils.

Section 242 of the Code specifies that "In all cases where such independent school district if created . . . would constitute a fourth class school district, the merits of the petition for its creation, from an educational standpoint, shall be passed upon by the Superintendent of Public Instruction and the petition shall not be granted unless approved by him." Consequently, since the proposed school district, if created, would be a district of the fourth class and since the Superintendent specifically disapproved its establishment, it follows that the court properly dismissed the petition unless, as the appellant argues, the requirement of the Superintendent's approval is an unconstitutional condition.

It is the appellant's contention that Section 242 of the Code constitutes a delegation of legislative power to the Superintendent of Public Instruction without prescribing "with reasonable clarity the limits of the power delegated" contrary to the provision of Article II, Section 1, of the Pennsylvania Constitution which vests the legislative power of the Commonwealth in the General Assembly. The question thus posed was ruled, adversely to the present appellant's contention, by our decision in *Baldwin Township's Annexation,* 305 Pa. 490, 158 A. 272. The *Baldwin Township* case involved the attempted annexation of a part of a township to a contiguous city under the Act of April 28, 1903, P. L. 332, as amended, 53 PS §95. The question of law presented for decision was whether the statute contained an unconstitutional restraint on the right of annexation wherein it provided "That in proceedings for the annexation of a part of a township no decree of annexation shall be entered until the State Council of Education, after due inquiry into the consequent effect upon the school districts affected, shall approve in writing of the proposed annexation." The

contention was rejected by this court in an opinion by Mr. Justice MAXEY who stated,—"In Locke's App., 72 Pa. 491, Justice AGNEW, with his customary clarity, said: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power; and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.'" On the basis of this recognition, the court concluded in the *Baldwin Township* case that, "the legislature has the same constitutional right to confer the power now questioned, on the state council of education, as it has to confer upon a parent the right to say whether a marriage license shall issue to that parent's minor child or to confer upon the secretary of the Commonwealth the right to say what kind of voting machines shall be used by the Commonwealth or to confer upon the voters in the respective counties the right to say whether or not voting machines shall be used in those counties. . . . In disapproving a proposed annexation of a part of a township to a city, the state council of education is not making a law; it is simply doing something officially to make nonoperative in a specific instance an annexation law which if the state council had given its approval would be operative in that particular instance."

The rationale of the decision in *Baldwin Township* is *a fortiori* applicable to the instant case. The dissenting opinion of Chief Justice FRAZER in *Baldwin Township* impliedly confirms that the State Council of Education is a proper arbiter of annexations where "school considerations" are solely involved. And, that

is all with which the instant case is concerned. Here, the legislature authorized a procedure for the establishment of independent school districts and, in respect of school districts of the fourth class, made the creation of a new district dependent upon the approval thereof by the Superintendent of Public Instruction. The authority thus conferred is manifestly restricted to "school considerations" while the statutory provision dealt with in the *Baldwin Township* case related also to municipal annexations. The power reposed in the Superintendent of Public Instruction by Section 242 of the Public School Code of 1949 is obviously less than that which *Baldwin Township* held had been constitutionally given the State Council of Education by the Act of 1903, as amended.

Nor can it reasonably be argued that the standard prescribed by Section 242 of the Code for the guidance of the Superintendent in reaching a conclusion as to the advisability of establishing an independent school district is fatally vague and uncertain. The statute directs the Superintendent to pass upon the merits of the petition "from an educational standpoint". Giving those words their usual and ordinary meaning (Statutory Construction Act of 1937, P. L. 1019, Sec. 33, 46 PS §533), they can have no other intended import than that the Superintendent must determine whether, on the basis of his expert knowledge in the field of education, the establishment of a proposed independent school district will advance or hinder the educational facilities in the designated area. It is difficult to imagine how the legislature could have more explicitly expressed its intention in the premises.

Finally, the appellant contends that the refusal of the Superintendent of Public Instruction to approve the petition for the establishment of an independent school district was arbitrary and constituted an abuse

of discretion since the Superintendent did not afford interested parties a hearing on the matter and, consequently, no record is available by which to adjudge the reasonableness of his conclusions. Aside from the fact that this contention was not raised in the court below and, therefore, would not ordinarily be considered here (*Muse-Art Corporation v. Philadelphia,* 373 Pa. 329, 332-333, 95 A. 2d 542; *Bourd v. Berman,* 359 Pa. 183, 185, 58 A. 2d 442), it is likewise without merit. As the appellant freely concedes, the Superintendent is under no statutory duty to conduct such a hearing. Moreover, the letter which the Superintendent addressed to the court below, upon disapproving the petition for the creation of an independent school district, plainly reveals that the Superintendent's determination was the result of his investigation of the merits of the petition and was neither arbitrary nor unreasonable.

Inasmuch as the statutory requirement of the Superintendent's approval of a petition for the establishment of an independent school district, as contained in Section 242 of the Code, does not offend against the Constitution and as the Superintendent competently disapproved the petition in the instant case, it becomes unnecessary for us to consider the appellant's further assertion that the findings of the court below were against the weight of the evidence.

The order dismissing the petition is affirmed at the appellant's costs.