## Petition to Reduce Membership in Bangor Borough Council

*Edmund P. Turtzo*, for petitioners.

*J. Lawrence Davis*, for respondents.

BARTHOLD, P. J., November 20, 1957.—This case is before the court upon the petition of electors of the Borough of Bangor requesting the entry of an order decreasing the number of councilmen in each of the borough's four wards from three to two, so that the coun-

cilmanic body shall hereafter consist of eight instead of 12 members. The petition was filed pursuant to section 816 of The General Borough Act of May 4, 1927, P. L. 519, as amended July 19, 1951, P. L. 1026, 53 PS §45816.

The petition recites that the requested decrease will accomplish the following results: "(a) The council body will be less unwieldy in size and therefore naturally make for more expeditious meetings. . . . (b) Council will be more comparable in size to that required by law since 1947 where no borough divided into wards may have more than two councilmen per ward. (c) Expenses for administration of council's affairs will be reduced by the elimination of four councilmen's salaries together with the economy which normally accompanies more efficient operation."

Bangor Borough Council and a number of interested citizens of the borough filed a motion to dismiss the petition on the ground that the statute authorizing the decrease delegates legislative power to the courts without prescribing with reasonable clarity the limits of the power delegated, contrary to the provision of article II, sec. 1, of the Pennsylvania Constitution which vests the legislative power of the Commonwealth in the General Assembly.

A decrease in the number of ward councilmen is authorized by the Act of July 19, 1951, P. L. 1026, under the following conditions:

"Whenever the electors of any borough divided into wards are authorized, by this act, or by a decree of court, to elect two members of council from each ward, or whenever a borough at the time of the enactment of this act shall elect three councilmen from each ward, and the council of such borough, in either case, consists of more than nine members, at least five per centum of the registered electors of such borough shall

have power to petition the court of quarter sessions for a decrease in the number of members of council from each ward, but in no instance shall the council consist of less than seven members. The purpose of such decrease may be to achieve any or all of the following results: A council which is less unwieldy in size; a council which is comparable in size to those in boroughs not divided into wards; a council consisting of an odd number of members instead of an even number; a reduction in borough expenditures; and, the expedition of the conduct of council meetings. Said petition shall clearly state whether it is the prayer of the petitioners that the number of members of such council to be elected in each ward shall be reduced from two to one, or from three to two or one, and shall further state the reasons why such reduction in number shall be desired. The sufficiency of the number of signers to any such petition shall be ascertained as of the date the petition is presented to court.

"The court shall give notice of the filing of such petition by advertisement in the legal journal of the county, if one is published in the county, and in one newspaper of the county, and in such notice shall fix a day and time for hearing. After such hearing, the court may decrease the number of councilmen elected from each ward from two to one, or from three to two or to one." [1]

The question of law presented for decision is whether the language of the statute provides a guide whereby the exercise of judicial discretion is to be tested.

The principles of constitutional law governing the problem are well established, but their application to the facts of a particular case is not always free from difficulty.

---

[1] Act of May 4, 1927, P. L. 519, art. VIII, sec. 816, as amended by the Act of July 10, 1947, P. L. 1621, sec. 15, and by the Act of July 19, 1951, P. L. 1026, sec. 1, 53 PS §45816.

"It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so. This, of course, means that the legislature is presumed not only to have put the true interpretation on the Constitution, but also to have understood the facts of the particular case, and that it did not wilfully disregard either. All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them." [2]

Legislative power is "the power or authority, under the constitution or frame of government, to make, alter and repeal laws". [3] The legislature may not "abdicate, transfer or delegate its authority or duty to another branch of the government. . . . The legislature may, however, leave to administrative officers, boards and commissions, the duty to determine whether the facts exist to which the law is itself restricted. In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed". [4]

---

[2] Hadley's Case, 336 Pa. 100, 104. See also Commonwealth ex rel. Woodside v. Sun Ray Drug Co., 383 Pa. 1; Cott Beverage Corp. v. Horst, 380 Pa. 113; Weaverland Ind. School Dist. Case, 378 Pa. 449; Loomis v. Phila. School Dist. Board of Education, 376 Pa. 428; Commonwealth v. Lukens, 312 Pa. 220; Gottschall v. Campbell, 234 Pa. 347; Sugar Notch Borough, 192 Pa. 349; Erie and North-East R. R. v. Casey, 26 Pa. 287; Goodwin v. Allegheny County, 182 Pa. Superior Ct. 28; Pagni v. Commonwealth, 179 Pa. Superior Ct. 213; Santus Unemployment Compensation Case, 177 Pa. Superior Ct. 496.

[3] O'Neil v. American Fire Ins. Co., 166 Pa. 72, 76.

[4] Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260. See also Wilson v. Phila. School District, 328 Pa. 225, 228; Marshall Impeachment Case, 363 Pa. 326, 337.

In the leading case, Locke's Appeal, 72 Pa. 491, Mr. Justice Agnew, at page 498, conceived the true distinction to be this: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power; and must, therefore, be a subject of inquiry and determination outside of the halls of legislation." [5]

"The well recognized prohibition against the delegation of legislative power is a necessary outgrowth of the fundamental theory of the separation of governmental functions which permeates our State and Federal Constitutions alike. . . . It is safe to assume, therefore, that the type of delegation of power by a legislative body which is invalid under the one Constitution is also invalid under the other, and that reliance may be placed upon such decisions arising under the Constitution of the United States in construing the Constitution of Pennsylvania. The validity of these assumptions has in fact been recognized in the recent case of Gima v. Hudson Coal Co., 310 Pa. 480." [6]

The Supreme Court of the United States has thus defined the essentials of the legislative function. "The Constitution as a continuously operative charter of government does not demand the impossible or the impractical. . . . The essentials of the legislative function are the determination of the legislative policy

---

[5] See also Weaverland Ind. School District Case, 378 Pa. 449, 454, 455; Baldwin Township's Annexation, 305 Pa. 490, 494; Root v. Erie Zoning Board of Appeals, 180 Pa. Superior Ct. 38, 44.

[6] Holgate Bros. Co. v. Bashore, 331 Pa. 253, 259, 260.

and its formulation and promulgation as a defined and binding rule of conduct. . . . These essentials are preserved when Congress has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective. It is no objection that the determination of facts and the inferences to be drawn from them in the light of the statutory standards and declarations of policy call for the exercise of judgment."[7]

"Undoubtedly the principle of the separation of powers in the three departments of government applies with least force and effect to the judiciary insofar as the entire concept of judicial discretion has been evolved. But it has never been supposed that a legislature may under the guise of reliance upon discretion abdicate its power and transfer it to the judiciary. When courts are said to exercise discretion the reference is to legal discretion within not without the bounds of the law."[8]

The rule was most aptly phrased by Chief Justice Marshall in Osborn v. Bank of U. S., 9 Wheaton 738, 866, 6 L. Ed. 204 (1824) : "Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the Court to follow it. Judicial power is never exercised

---

[7] Yakus v. United States, 321 U. S. 414, 424. See also McKinley v. United States, 249 U. S. 397, 398-399; United States v. Grimaud, 220 U. S. 506, 515-517; American Baseball Club of Philadelphia v. Philadelphia, 312 Pa. 311, 317-319.

[8] Commonwealth v. Franklin, 172 Pa. Superior Ct. 152, 183.

for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law." [9]

In applying the foregoing principles to the statute under consideration, two basic questions must be answered: (1) Was there any practical necessity in administration of government for permitting the legislature to enact a statute of the type under consideration? (2) Does the statute set forth definite standards, policies and limitations, to which the court must adhere?

It is our considered judgment that both questions must be answered in the affirmative and that the provisions of the statute must, therefore, be upheld as constitutional. The subject matter to be regulated was the number of councilmen to be elected in the boroughs of the Commonwealth. The legislature dealt with this subject in section 807 of The General Borough Act of 1927.[10] Section 807 provided for the election of seven councilmen in boroughs not divided into wards and for the election of at least one councilman and not more than three councilmen in each ward in boroughs divided into wards. This section was amended in 1947.[11] The amendment retained the provision that seven councilmen should be elected in boroughs not divided into wards but reduced the maximum number of councilmen to be elected in boroughs divided into wards from three to two in each ward, except in

---

[9] See also Maloney v. Stahlnecker, 341 Pa. 517, 522; Dauphin County Grand Jury Investigation Proceedings (No. 3), 332 Pa. 358, 364; Schlaudecker v. Marshall, 72 Pa. 200, 206; Melnick v. Melnick, 147 Pa. Superior Ct. 564, 570.

[10] Act of May 4, 1927, P. L. 519, art. VIII, secs. 807-816.

[11] Act of July 10, 1947, P. L. 1621, sec. 13, 53 PS §45807.

boroughs, such as the Borough of Bangor, where, prior to the passage of the amendment, three councilmen were elected in each ward. In such boroughs the number of councilmen was fixed at three in each ward until such number was reduced in the manner provided by statute.

At the time of the enactment of the foregoing legislation there was no uniformity in the ward structure of the boroughs of the Commonwealth. Many boroughs were not divided into wards at all, many others were divided into wards but varying in number. This situation prevailed and still prevails because the court of quarter sessions may, under article VIII, sec. 11, of the Pennsylvania Constitution and the legislation implementing its provisions,[12] change from time to time the number of wards in any borough upon proper petition of the electors. In the circumstances, the legislature could not fix the exact size of the councilmanic body except in boroughs not divided into wards, hence there was practical necessity in administration of government for permitting the legislature to enact a statute of the type under consideration.

In view of the nature of the subject matter dealt with and of the inherent difficulty of laying down more specific rules which would be applicable under the multitude of situations to which the statute might become applicable, the legislature could not reasonably be expected to do more than lay down its basic rules of policy leaving the details to be worked out by the court of quarter sessions.

The legislature properly designated the court of quarter sessions as the tribunal to determine whether the facts existed to which the law was itself restricted.

---

[12] Act of May 4, 1927, P. L. 519, art. VI, sec. 601, as amended July 10, 1947, P. L. 1621, sec. 9, 53 PS §45601.

Article VIII, sec. 11, of the Pennsylvania Constitution confers upon the court of quarter sessions exclusive jurisdiction to grant or refuse a petition to divide an election district into one or more separate districts. Under this grant of power the court of quarter sessions is not purely a legal tribunal but is vested with administrative and in a measure representative powers.

There remains for consideration the question: Does the statute set forth reasonably definite standards, policies and limitations to which the court of quarter sessions, as the designated tribunal, must strictly adhere? We think that it does.

The provisions of the statute are not operative unless the following *provable facts* exist: (1) The borough must be divided into wards. (2) The borough must be one authorized by the statute or by a decree of court to elect two members of council from each ward, *or*, as in the instant case, must be one which at the time of the enactment elected three councilmen from each ward. (3) The council of such borough must consist of more than nine members. (4) The requested decrease must not result in a council of less than seven members.

If the above facts are established, five percentum of the registered electors of the borough are authorized to petition the court for the decrease. The court must determine whether the number of signatures to the petition exceeds five percentum of the registered electors of the borough and whether the signatures are genuine. These are *provable facts*.

The statute further provides that: "The purpose of such decrease may be to achieve any or all of the following results: a council which is less unwieldy in size; a council which is comparable in size to those in boroughs not divided into wards; a council consisting

of an odd number of members instead of an even number; a reduction in borough expenditures; and, the expedition of the conduct of council meetings."

We are of opinion that the above broad, general formula of results to be achieved is sufficiently definite to serve the designated tribunal, viz., the court of quarter sessions, with reasonable, intelligent standards for action in accordance with the will of the legislature. The grant of such broad discretionary power to the court of quarter sessions was constitutionally permissible because under article VIII, sec. 11, of the Pennsylvania Constitution the court of quarter sessions is not purely a legal tribunal but is vested with administrative and in a measure representative powers.

Counsel for respondents in a comprehensive and excellent brief of the problems involved contends that the legislative purposes to be achieved are not susceptible of ascertainment from provable facts. We have little difficulty in overruling this contention. While some of the results to be attained appear to be indefinite as standards, they cease to be so when read in the light of the general purposes of the statute. Furthermore, respondents' contention overlooks the well established principle that "it is no objection that the determination of facts and the inference to be drawn from them in the light of the statutory standards and declaration of policy call for the exercise of judgment. . . ."[13]

The over-all legislative purpose was to limit the size of borough councils as nearly as possible to seven members. This is indicated by the fact that in the only instance where the legislature could fix the exact number of councilmen, viz., in boroughs not divided into

---

[13] Yakus v. United States, 321 U. S. 414, 424, supra.

wards, it did so by providing that in such boroughs the council should consist of seven members. The same legislative purpose is indicated by the fact that when the legislature authorized a decrease in the number of councilmen, it provided as one of the standards that the decrease result in a council comparable in size to those in boroughs not divided into wards and further provided that in no instance should the decrease result in a council consisting of less than seven members.

We are convinced that the statute under attack does not bestow upon the court of quarter sessions a grant of arbitrary power. The court is not given carte blanche to do as it pleases. The power of the court is limited to the proper legal exercise of a sound discretion reasonably based upon the attendant pertinent circumstances from which its exercise arises. The statute is not so incomplete in its provisions that it cannot be executed, or so vague, indefinite and uncertain that the courts are unable to determine with reasonable degree of certainty what the legislature intended.[14] Unlike the Act of July 10, 1947, P. L. 1621, sec. 15, which was declared unconstitutional for lack of standards,[15] the amendatory statute presently before us does set forth the legislative policy and the standards and boundaries within which the court shall exercise its discretion. The statute must, therefore, be sustained as constitutional.

## Order

And now, November 20, 1957, the motion to dismiss the instant petition for a reduction in number of members of the Bangor Borough Council is refused.

---

[14] Miller v. Belmont Packing & Rubber Co., 268 Pa. 51, 63; Kellerman v. Philadelphia, 139 Pa. Superior Ct. 569, 577.

[15] In re Dickson City Council, 73 D. & C. 358; 51 Lack. Jur. 229.