# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Somerset Area School District, :
              Petitioner :
               :
               :
           v. :
               :
               :
Rockwood Area School District, :
Joseph E. Archer, Nancy J. Bonati, :
Christopher C. Bosworth, Deborah A. :
Bosworth, Belita J. Brown, Stephen C. :
Brown, Deborah A. Cunningham, Paul :
V. Cunningham, Candace DiMarco, :
Ross F. DiMarco Jr., Janeen Dupre, :
Karen A. Farmerie, Wilson J. :
Farmerie, David A. Fetchko, Mary :
Ellen Fetchko, Clifford J. Forrest, :
Tracy L. Forrest, Gary D. Gadley, :
Annette D. Ganassi, Hemlock Property :
LLC, Georgia C. Hernandez, Robert :
M. Hernandez, Martha E. Hildebrandt, :
Mark J. Hileman, Rebecca L. Hileman, :
James A. Nassif, Qualified Personal :
Residence Trust, Susan A. Jurik, Kurt J. :
Lesker III, William J. Lloyd, David P. :
Mendis, Lisa B. Mendis, Joseph C. :
Metzgar, Lynette E. Metzgar, Erin :
Morris, Michael A. Morris, Netco Inc., :
Mary Jo Ochson, John C. Prentice, :
Douglas Keith Rosetti, Ronald T. :
Rosetti, Seven Springs Farm, Inc., :
Matthew Tarosky, Three Rivers :
Enterprises Inc., David A. Tonnies, :
Cynthia G. Urgo, Donald J. Urgo, :
Virginia's Pheasant Run Limited :
Partnership, David A. Webber, Lorie A. :
Webber, Harold Wiegel, Steven H. :
Wiegel, James P. Wilhelm, Paige M. :
Wilhelm, Jackie Wolfe, Jacquelyn K. :
Wolfe, Tim Wolfe, and Timothy W. :
Wolfe (Pennsylvania Department of :
Education), : No. 175 C.D. 2022
           Respondents : Argued: April 3, 2023

BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED:  May 5, 2023

Somerset Area School District (Somerset) petitions this Court for review of the Secretary of Education's (Secretary) February 4, 2022 order (Order) approving Respondents'[1] Petition to Establish an Independent School District for Property Situated in Jefferson Township, Somerset County for Purposes of Transfer from Somerset to Rockwood Area School District (Rockwood) (Petition).  Somerset presents six issues for this Court's review: (1) whether this Court should revisit *Archer v. Rockwood Area School District*, 249 A.3d 617 (Pa. Cmwlth. 2021), wherein this Court concluded that Respondents' desire to lower their tax millage is relevant to educational merit since there are presently no students in the proposed independent school district; (2) whether the Secretary, on remand, erred by merely reciting rather than analyzing the evidence this Court considered potentially relevant; (3) whether the Secretary erred by considering Somerset's and Rockwood's

---

[1] Respondents, various property owners, among others, include: Rockwood Area School District, Joseph E. Archer, Nancy J. Bonati, Christopher C. Bosworth, Deborah A. Bosworth, Belita J. Brown, Stephen C. Brown, Deborah A. Cunningham, Paul V. Cunningham, Candace DiMarco, Ross F. DiMarco Jr., Janeen Dupre, Karen A. Farmerie, Wilson J. Farmerie, David A. Fetchko, Mary Ellen Fetchko, Clifford J. Forrest, Tracy L. Forrest, Gary D. Gadley, Annette D. Ganassi, Hemlock Property LLC, Georgia C. Hernandez, Robert M. Hernandez, Martha E. Hildebrandt, Mark J. Hileman, Rebecca L. Hileman, James A. Nassif, Qualified Personal Residence Trust, Susan A. Jurik, Kurt J. Lesker III, William J. Lloyd, David P. Mendis, Lisa B. Mendis, Joseph C. Metzgar, Lynette E. Metzgar, Erin Morris, Michael A. Morris, Netco Inc., Mary Jo Ochson, John C. Prentice, Douglas Keith Rosetti, Ronald T. Rosetti, Seven Springs Farm, Inc., Matthew Tarosky, Three Rivers Enterprises Inc., David A. Tonnies, Cynthia G. Urgo, Donald J. Urgo, Virginia's Pheasant Run Limited Partnership, David A. Webber, Lorie A. Webber, Harold Wiegel, Steven H. Wiegel, James P. Wilhelm, Paige M. Wilhelm, Jackie Wolfe, Jacquelyn K. Wolfe, Tim Wolfe, and Timothy W. Wolfe.

(collectively, the Districts) tax millage differences when there was no evidence of the effect on the Districts; (4) whether the Secretary erred by finding a difference in management quality without considering all relevant factors; (5) whether substantial evidence supports the Secretary's finding of educational merit in the proposed transfer; and (6) whether the Secretary's finding of educational merit was against the weight of the evidence.[2]  After review, this Court vacates and remands.

## I. Background

On June 1, 2012, Respondents filed the Petition in the trial court pursuant to Section 242.1 the Public School Code of 1949 (School Code),[3] 24 P.S. § 2-242.1, therein seeking to transfer territory consisting of a portion of property located within Jefferson Township (Territory) out of the Districts for educational and real estate tax improvement purposes.  *See* Reproduced Record (R.R.) at 400a.

Section 242.1(a) of the School Code provides, in relevant part:

A majority of the taxable inhabitants of any contiguous territory in any school district or school districts, as herein established, may present their petition to the court of common pleas of the county in which each contiguous territory, or a greater part thereof, is situated, asking that the territory be established as an independent district for the sole purpose of transfer to an adjacent school district contiguous thereto.  Where the territory described in any such petition is to be taken from two or more school districts, such petition shall be signed by a majority of all the taxable inhabitants of the part of each school district which is to be included in such independent district for transfer.  Such petitions shall set forth a proper description of the boundaries of the territory to be included in such proposed independent district, and the reasons of the

---

[2] This Court has reordered and summarized Somerset's issues for ease of discussion herein.
[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.  Section 242.1 was added by Section 1 of the Act of June 23,1965, P.L. 139.

> petitioners for requesting such transfer to another school district and the name of the district into which its territory is proposed to be placed.

24 P.S. § 2-242.1(a).

Somerset is located in Somerset County, which is comprised of four municipalities: Lincoln Township, Jefferson Township, Somerset Township, and Somerset Borough. *See* R.R. at 9a. None of Somerset's school buildings are located in Jefferson Township. *See id*. Somerset had a total of 2,263 students enrolled for the 2014-2015 school year. *See id*. The Territory is located south of Forbes State Forest within Jefferson Township in the southwestern part of Somerset County and is the part of Somerset that is contiguous to Rockwood. *See id*. The Territory consists of 39 parcels of real property situated in Jefferson Township, all of which pay real estate taxes to Somerset. *See id*. Of the 39 parcels, 25 property owners joined the Petition (Joinders). *See id*. Many properties within the Territory are on dead-end roads that originate in Middlecreek Township, which is assigned to Rockwood, but end in Jefferson Township. *See id*. Nine of the 39 properties are owned by entities rather than individuals. *See* R.R. at 10a. Only 2 property owners among the 25 Joinders have established permanent residency, are voters registered at those addresses, and pay earned income tax and per capita tax or adult residence tax to Somerset. *See id*. Approximately half of the 39 parcels are not improved by a home or residential building structure and, of those that are (aside from possibly 8 full-time residents associated with an unknown quantity of parcels as asserted by Respondents), the residences are not primary residences. *See id*.

Rockwood is located in Somerset County, and is comprised of eight municipalities: Black Township, Casselman Borough, Middlecreek Township, Milford Township, New Centerville Borough, Rockwood Borough, Seven Springs Borough, and Upper Turkeyfoot Township. *See* R.R. at 11a. During the 2013-2014

4

school year, 729 students were enrolled in Rockwood and 23 students were enrolled in non-public schools. *See id.*

Respondents alleged in the Petition that there is a greater distance between the Territory and Somerset's schools than between the Territory and Rockwood's schools. *See* R.R. at 399a. Respondents further asserted that the property owned by Seven Springs Farm, Inc., (Seven Springs Farm) located within the Territory, is the only portion of Seven Springs Farm's property that is not located within Rockwood. *See id.* In addition, the plan of lots known as Pheasant Run is located partly in Somerset and partly in Rockwood. *See id.* Respondents also averred that the 13:1 teacher-to-student ratio in Rockwood is better than the 14:1 ratio in Somerset, and that Rockwood offers a superior educational opportunity. *See* R.R. at 400a. Additionally, Respondents alleged that the 2010 tax millages for Rockwood and Somerset were 21.89 and 37.96 respectively. *See id.* Their 2011 tax millages were 21.89 and 39.50 respectively. *See id.*

On August 22, 2012, the Somerset County Common Pleas Court (trial court) held a hearing to consider whether the Petition complied with the preliminary requirement of Section 242.1(a) of the School Code that Respondents qualify as "[a] majority of taxable inhabitants of a[] contiguous territory[.]" 24 P.S. § 2-242.1(a). On November 16, 2012, the trial court concluded that Respondents failed to meet the statute's preliminary procedural requirements because only two of the Petition signers qualified as taxable inhabitants and, even if the trial court included four properties that are contiguous to the parcels owned by those taxable inhabitants, that area was not adjacent to Rockwood into which it was proposed to be transferred. Thus, the trial court dismissed the Petition.

Respondents appealed to this Court. On August 9, 2013, this Court held "that the trial court erred in concluding that a 'taxable inhabitant,' as used in the [School Code], must be a human being who permanently resides in the proposed

5

independent school district to participate in a transfer proceeding[.]" *In re Indep. Sch. Dist. for Prop. Situate in Jefferson Twp.*, 74 A.3d 389, 390 (Pa. Cmwlth. 2013) (footnote omitted).  Accordingly, this Court reversed the trial court's order and remanded for further proceedings.

On April 22, 2014, the trial court forwarded the Petition to the Secretary to evaluate the Petition's educational merits in accordance with Section 242.1 of the School Code.  The Department of Education (Department) forwarded Educational Impact Projection Questionnaires to the Districts.  The Districts responded to the questionnaires and the matter was assigned to the Deputy Secretary for consideration.  The Deputy Secretary concluded that it was impossible to evaluate the proposed transfer's educational merit because no students lived in the proposed independent school district.  Absent students living in the proposed school district, the Deputy Secretary determined that the Petition lacked educational merit.

Respondents sought a formal administrative hearing to challenge the Deputy Secretary's decision.  On August 1, 2019, a hearing examiner conducted a hearing at which the parties presented a joint stipulation and witness testimony.  Following the hearing, the Secretary issued a decision adopting the Deputy Secretary's determination as his adjudication.

Respondents again appealed to this Court, s*ee Archer*, arguing that the Secretary erred by concluding that the absence of any students residing in the proposed school district was fatal to the Petition.  In *Archer*, this Court reversed the Secretary's order, explaining:

> Section 242.1(a) [of the School Code] contains a detailed list of what must be contained in a petition to establish an independent school district.  The petition must contain: (1) the boundaries of the proposed independent school district; (2) a verification that a majority of "taxable inhabitants" in the "contiguous territory" agree to the transfer; (3) the reasons for the transfer; and (4) an

6

identification of the school district to be joined. 24 P.S. § 2-242.1(a). This list does not include a statement that students currently reside in the independent school district. Likewise, it does not require any information about the number of students that may be affected or how a transfer would benefit them.

Section 242.1(a) [of the School Code] requires the Secretary to consider the "*merits of the petition*" from an "educational standpoint." 24 P.S. § 2-242.1(a) (emphasis added). In *In re Weaverland Independent School District*, . . . 106 A.2d 812, 813-14 ([Pa.] 1954), the phrase "merits . . . from an educational standpoint" was challenged as vague and an impermissible delegation of legislative power. Acknowledging that a statute must prescribe "with reasonable clarity the limits of power delegated," the [Pennsylvania] Supreme Court held that "educational merit" met that clarity standard. *Id*. at 814 (quotation omitted). It held that "educational merit" referred to "school considerations," giving the phrase "educational merit" its "ordinary meaning." *Id*. at 814-15. Specifically, the review requires the Secretary to determine whether "the establishment of a proposed independent school district will advance or hinder the educational facilities in the designated area." *Id*. at 815.

This Court has explained that the term "educational" means "of, relating to, or concerned with education or the field of education" and "[s]erving to further education." [*In re Petition for Formation of Indep. Sch. Dist. Consisting of the Borough of Highspire*], 228 A.3d [584,] 593 [(Pa. Cmwlth. 2020), *rev'd*, 260 A.3d 925 (Pa. 2021) (*Highspire II*)] (citing Webster's Third New International Dictionary 723 (2002)). The term "education" refers to a course of study, learning, instruction, and training. *Id*. These are abstract precepts.

*Archer*, 249 A.3d at 624-25 (footnote and citation omitted).

The *Archer* Court expounded:

**The Secretary's analysis of educational merit must be done without regard to a discrete student population. Indeed, any student population changes over the course of years, as students move in or out of the district or graduate.** It is noteworthy that it took the

7

Secretary five years to make a determination on the educational merit of the proposed independent school district.

The Secretary's conclusion is also inconsistent with this Court's holding that standing to file a transfer petition is based upon liability for real estate taxes, not upon parenthood or residency. [*See*] *Jefferson Twp.* . . . . A petition for an independent school district transfers territory from one school district to another, [*In re: Petition for Formation of Indep. Sch. Dist.* (]*Riegelsville II*[),] 17 A.3d [977,] 988 [(Pa. Cmwlth. 2011)]; it does not transfer people.

*Archer*, 249 A.3d at 625 (bold emphasis added). Thus, this Court held that the Secretary erred by dismissing the Petition based on the lack of students residing in the proposed independent school district.[4]

The *Archer* Court further emphasized:

Merit from an educational standpoint begins with "school considerations." [] *Weaverland*, 106 A.2d at 814. We have held that "school considerations" include[] the proximity of schools to the proposed independent school district. *Riegelsville II*, 17 A.3d at 990-91. It also includes consideration of the educational outcomes of each district. There is no requirement that a petition involve an exit from

---

[4] Senior Judge Leadbetter dissented, explaining:

I fully agree with the majority that the absence of school-aged students in an area for which a district transfer is proposed does not, in and of itself, bar the transfer or automatically mean that there can be no educational merit to the transfer. However, I disagree that the Secretary . . . based his decision on any such conclusion. In discussing his agreement with the recommendation of the hearing examiner, he stated[:] "I do not believe the Deputy Secretary imposed a specific requirement that there be school[-]age[d] students to approve the Petition." (Sec'y's Op. at p.4.) Rather, he found that under the highly unusual circumstances here, evidence regarding the traditional factors would be too speculative to form the basis of a conclusion regarding educational merit.

*Archer*, 249 A.3d at 627 (Leadbetter, S.J., dissenting).

8

a severely deficient school district in order to show educational merit.

*Archer*, 249 A.3d at 625 (citation omitted). In addition, the *Archer* Court considered the parties' stipulation which, *inter alia*, reflected that Rockwood's schools are closer to the proposed independent school district than Somerset's schools. With respect thereto, the *Archer* Court noted that "[a] reduction in students' travel time has been held to demonstrate educational merit." *Id*. The *Archer* Court also referenced Rockwood's better student/teacher ratio, lower tax millage rates and fewer administrators, stating that "[b]etter management has been held to demonstrate educational merit." *Id*. at 626. The *Archer* Court further observed that Rockwood students scored better than Somerset students on various proficiency tests over a seven-year period, and that the School Code "makes district performance a factor in the evaluation of educational merit." *Id*.

Concluding that the Secretary had refused to evaluate the stipulated facts and hearing testimony because of the absence of any students in the proposed territory, this Court reversed the Secretary's order and remanded the matter to the Secretary to "evaluate all of the evidence against the factors that, according to precedent, have been held to demonstrate merit from an educational standpoint." *Id*. at 627.

On October 7, 2021, the Pennsylvania Supreme Court issued its decision in *Highspire II*, wherein the Supreme Court explained:

> Transfer petitions under Section []242.1 [of the School Code] are factually unique and depend upon the circumstances raised in a particular case. In those petitions **where financial conditions may play a role in the Secretary's assessment of educational merit**, **there should be no constraints on his or her ability to take them into consideration**. Moreover, it must be acknowledged that **in reviewing a petition for educational merit**, **the Secretary must take a holistic approach**, **looking not just at the *students* who would**

9

**be transferred**, **but at the *students* in each of the affected school districts**. *See, e.g.*, *Wash*[.] *Twp.* [*Indep. Sch. Dist. v. Pa. State Bd. of Educ.*, 153 A.3d 1177,] 1181 [(Pa. Cmwlth. 2017)]. No language in Section 242.1 [of the School Code] requires the Secretary to limit his or her review only to the newly proposed school district, and neither the Secretary nor the Commonwealth Court have ever limited an educational merits analysis in this way.

*Highspire II*, 260 A.3d at 941 (italic, bold and underline emphasis added; footnote omitted).

On February 4, 2022, the Secretary issued his opinion on remand (Opinion) and the Order. *See* R.R. at 8a-33a. In his Opinion, the Secretary referenced *Archer*, stating:

> [L]ooking at many of the traditional factors of "educational merit" present in its previous cases, **the [*Archer*] Court has found that the record in this matter contains evidence of educational merit**. Notably in *Archer*[,] the Commonwealth Court did not accept former Secretary Rivera's conclusion that the weight of the academic merits presented by this transfer could not be determined due to a lack of students or prospective students in the territory. The Court has also implicitly rejected former Secretary Rivera's conclusion that because there was no evidence that *travel times* of any potential students would be reduced by the transfer (as opposed to simply *travel distance*) that was not a measure of educational merit. Further in *Archer*, [the] Commonwealth Court rejected former Secretary Rivera's conclusion that the School Code states an educational preference for keeping a township (in this case, Jefferson Township) as part of one school district. Instead, the [*Archer*] Court stated that **the Secretary must focus on the need to keep a "community of interest" together which it found would be the case in this matter by bringing the real estate development of Seven Springs Farm []. together in one school district**.

R.R. at 23a-24a (bold emphasis added).

10

Acknowledging that he was constrained by *Archer*, the Secretary then concluded that reduced travel distance, better academic results, better school district management, and more favorable taxes demonstrate educational merit favoring the transfer. Somerset appealed to this Court.[5]

## II. Discussion

Initially, the *Highspire II* Court explained:

Section []242.1 of the [] School Code ([]Section 242.1[]) provides a means for a majority of the taxable inhabitants within a geographical territory to file a petition to create an independent school district for the purpose of transferring that territory to another school district that is territorially contiguous with that of the petitioning district. 24 P.S. § 2-242.1. The petition must initially be filed with the court of common pleas, which determines if the petition meets certain basic procedural requirements, e.g., that a majority of the taxable inhabitants of the would-be independent district have signed the petition and that the proposed receiving district is contiguous to that territory. *See In re Establishment of Indep.* [*Sch.*] *Dist. of Wheatland*, 846 A.2d 771 (Pa. [Cmwlth.] 2004). The court of common pleas then sends the petition to the Secretary, who then must pass on "the merits of the petition for its creation, from an educational standpoint." 24 P.S. § 2-242.1.

If the Secretary approves the petition, it is returned to the trial court to sign a decree establishing the independent school district, along with a statement of the obligations of the school district from which the independent school district is being severed and a statement prorating the state subsidies payable between or among the former school district and the new school district. *Wheatland*, 846 A.2d at 773. The matter is then transferred to the State Board

---

[5] "This Court's review determines whether constitutional rights have been violated, whether the adjudication is in accordance with the law, whether the proceedings relating to practice and procedure before an agency were violated, and whether necessary findings of fact are supported by substantial evidence." *Archer*, 249 A.3d at 622 n.5.

[of Education] under Section 292.1 of the School Code,[6] *Wash*[.] *T*[*wp.*], 153 A.3d at 1187, to determine whether the transfer would "violate the adopted [State] Board [of Education] standards or express statutory standards that govern the organization of school districts." *Riegelsville II*, 17 A.3d at 981-82. If the State Board [of Education] approves, then the independent district is merged into the new and reconstituted school district. *Id.*

*Highspire II*, 260 A.3d at 936.

Even though the School Code neither defines the phrase "merits from an educational standpoint" nor any of the component words therein, the phrase is not vague, is not a technical term, and must be given its ordinary meaning. *Riegelsville II*, 17 A.3d at 985 n.10. Specifically[,] regarding the scope and meaning of the Secretary's statutory authority to "pass" on the merits, we have held that his or her authority is not open-ended but instead restricted to the substantive provisions of the School Code. *Id.* at 991. Further, analogizing the Secretary's role to a veto power, *id.* at 982, we have held: "[W]hen the Secretary exercises his [or her] discretion to determine whether a proposed transfer has 'merit from an educational standpoint,' he [or she] must be guided by the policy choices made by the legislature in the [School Code] and not by his [or her] own personal sense of what constitutes good education policy." *Id.* at 991. This "manifest restriction" on the Secretary's power is "necessary lest the statute violate the proscription against delegating legislative power to an administrative agency." *Id.* at 988-89.

*Wash. Twp.*, 153 A.3d at 1184.

The [] School Code . . . creates comprehensive accountability mechanisms. It includes provisions requiring school districts to submit yearly financial reports with budget statements, [*See* Sections 218,[7] 687, 2133[8] of the School Code, 24 P.S.] §§ 2-218, 6-687, 21-2133, and establishes auditing and reporting requirements. [*See*

---

[6] Added by the Act of June 23, 1965, P.L. 139, *as amended*, 24 P.S. § 2-292.1.
[7] Added by the Act of May 10, 2000, P.L. 44, No. 16, § 1.1.
[8] Added by the Act of February 4, 1982, P.L. 1, § 5.

Sections 2401-2462, 24 P.S.] §§ 24-[2]401 - 24-2462. Records of these reports are required to be retained by the district for at least six years. [*See* Section 518 of the School Code, 24 P.S.] § 5-518. The General Assembly has created a framework for identifying and monitoring school districts in financial distress and to assist them in financial recovery through the development and implementation of recovery plans. [*See* Sections 601-A-695-A of the School Code, 24 P.S.] §§ 6-601-A - 6-695-A.[9] The General Assembly developed a special system to assess school districts' financial practices and establish public financial accountability. [*See* Sections 2501-2511 of the School Code, 24 P.S.] §§ 25-2501 - 25-2511 . . . . Districts that use "best practices" because of demonstrated financial management "instill public confidence," while those who do not exhibit best practices are required to provide an action plan to remedy issues identified by the assessment. *See* [Sections 2507-A - 2508-A of the School Code, 24 P.S.] §§ 25-2507-A - 25-2508-A.[10] These provisions are supplemented by regulations in [Chapter 18 of the State Board of Education's Regulations,] 22 Pa. Code [§§ 18.1-18.8], and together they aim to identify school districts with negative financial conditions that might impact their ability to provide and maintain educational programs for students and methods to rectify those conditions.

These provisions of the [] School Code reflect our General Assembly's unmistakable recognition that a school district's financial health is an essential factor in its ability to provide a suitable education to its students. To require the Secretary to attempt to fulfill his [or her] duty to ascertain the educational merits of a school district transfer under Section 242.1 [of the School Code] without considering the issues of financial viability undermines his or her ability to make a meaningful determination. The [] School Code demonstrates the legislature's obvious recognition that a school district cannot educate students without adequate resources. Educational resources are not free - teachers, buildings, school supplies, computers, etc.

---

[9] Sections 601-A - 695-A of the School Code were added by Section 10 of the Act of July 12, 2012, P.L. 1142.

[10] Sections 2507-A and 2508-A of the School Code were added by Section 36 of the Act of December 23, 2003, P.L. 304.

all need to be financed. To the extent that a proposed independent school district results in undermining the ability of the remaining school district to finance the educational needs of its students, that detriment is a legitimate consideration in the Secretary's analysis. For these reasons, in conducting a review of the educational merits of a proposed school district transfer petition, the Secretary may undoubtedly consider financial conditions that would result from the transfer.

*Highspire II*, 260 A.3d at 940.

Moreover,

[t]he leading case on the construction of th[e] words[, "merits from an educational standpoint,"] is . . . *Weaverland* . . . . It addressed the meaning of "merits from an educational standpoint" and the extent of the Secretary's power to determine those merits.

*Riegelsville II*, 17 A.3d at 986.

[The *Weaverland* Court] explained:

The statute directs the [s]uperintendent to pass upon the merits of the petition "from an educational standpoint." Giving those words their usual and ordinary meaning, [*see*] Statutory Construction Act of 1937, P.L. 1019, Sec[tion] 33, [*formerly*] 46 P.S. § 533, [repealed by the act of December 6, 1972, P.L. 1339,] *they can have no other intended import than that the Superintendent must determine whether*, on the basis of his expert knowledge in the field of education, *the establishment of a proposed independent school district will advance or hinder the educational facilities in the designated area. It is difficult to imagine how the legislature could have more explicitly expressed its intention* in the premises.

[*Weaverland*], 106 A.2d at 815 (emphasis added).[11]

---

[11] The *Riegelsville II* Court further stated:

*Riegelsville II*, 17 A.3d at 988.

> *Weaverland* interpreted "merits from an educational standpoint" at a time when approval of an independent school district effected a new district, not a transfer, and the reason for a proposed new district was limited to "better facilities." **Nevertheless**, *Weaverland* **continues to control the construction of** "**merits from an educational standpoint**" **in two important respects**. First, the [Pennsylvania] Supreme Court held that the Secretary's power under Section 242 [of the School Code]

---

In 1954, when *Weaverland* was decided, the [School Code] contained a provision at Section 241 [of the School Code] that explains the [Pennsylvania] Supreme Court's above-quoted analysis. Section 241 [of the School Code] stated, in relevant part, as follows:

> Such petition shall set forth a proper description of the boundaries of the territory to be included in such proposed independent school district, *and the desire of the petitioners for better school facilities than are or would be provided and maintained by the district or districts of which such independent school district is a part*.

24 P.S. § 2-241 (emphasis added). Section 241 [of the School Code] has been replaced with the following provision:

> Such petition[s] shall set forth a proper description of the boundaries of the territory to be included in such proposed independent district, *and the reasons of the petitioners for requesting such transfer* to another school district and the name of the district into which its territory is proposed to be placed.

Section 242.1(a) of the [School Code], 24 P.S. § 2-242.1(a) [(emphasis added)]. The current law, *i.e.*, Section 242.1(a) [of the School Code], does not mention school facilities. Petitioners are now free to cite reasons other than "better school facilities" for their proposed transfer.

*Riegelsville II*, 17 A.3d at 988.

15

is "manifestly restricted," which is necessary lest the statute violate the proscription against delegating legislative power to an administrative agency. Second, in ruling that "merits from an educational standpoint" was not vague, the [Pennsylvania] Supreme Court turned to other, relevant provisions in the [School Code] to give the standard substance. That continues to be the appropriate approach to discerning the meaning and application of the statutory standard.

*Riegelsville II*, 17 A.3d at 988-89 (emphasis added; footnote omitted).

### A. Law of the Case

Somerset first argues that given the Pennsylvania Supreme Court's holding in *Highspire II*, this Court should revisit its *Archer* decision. Despite approving the Petition, the Secretary expressed his unease in finding educational merit in the transfer where there are no students in the Territory. He questioned *Archer's* continued applicability in light of our Supreme Court's *Highspire II* decision. The Secretary observed:

> [W]hile I am **required** to follow the ruling of [the] Commonwealth Court in *Archer* remanding this matter, I believe the [Commonwealth] Court's opinion to be in tension with the [Pennsylvania] Supreme Court's subsequent ruling in [*Highspire II*]. While Somerset did not appeal *Archer* and the cases involve different issues, **the fact that *Archer* prevents me from considering that there are no students here**, **or in my view**[,] **no reasonable prospect of students**, **is difficult to reconcile with [*Highspire II*]. Indeed, the *Archer* [C]ourt's statements** that the definition of educational merit involves "abstract precepts" and that "[t]he Secretary's analysis of educational merit must be done without regard to a discrete student population" **is** [sic] **difficult to square with [our] Supreme Court's statement in [*Highspire II*] that in reviewing such petitions "the Secretary must take a holistic approach**, *looking not just at the students* **who would be** *transferred*, **but at the** *students* **in each of the affected school districts**."

16

[*Highspire II*], [260 A.3d] at 941[] ([italic] emphasis added). *Compare also with Archer*, 249 A.3d at 627 ([s]tating that "[a] petition for an independent school district transfers territory from one school district to another . . . does not transfer people"[]). Indeed, it is arguable that the Supreme Court's approach to viewing these cases, following the values set forth in the School Code, is a student-based approach and the approach embodied in the *Archer* opinion is not. It is also clear in [*Highspire II*] that the Secretary's role in determining educational merits is to weigh educational values when they may be competing. Accordingly, it is problematic to require the Secretary to ignore discrete student populations impacted, or in this case that no actual students will be benefited by improved transportation times or improvements in test scores or school district management. **Without actual students**, **it appears the only educational benefit here is reduced taxes for certain taxpayers**, **which the Commonwealth Court itself has held is not sufficient in its own to constitute educational merit**. *Archer*, 249 A.3d at 627. **If I were to be permitted to consider the lack of students** involved in this transfer, **I would weigh the educational benefits to this transfer to the hypothetical students in this territory to be negligible**.

R.R. at 30a-31a (bold emphasis added).

Respondents counter that, notwithstanding the Secretary's misgivings, the "law of the case" doctrine prevents this Court from revisiting its earlier holding in *Archer*. The Pennsylvania Supreme Court has described:

Th[e law of the case] doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that[] (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) **upon a second appeal**, **an appellate court may not alter the resolution of a legal question previously decided by the same appellate**

17

> **court**; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (emphasis added; citations omitted). "Departure from . . . these principles is allowed only in exceptional circumstances such as where there has been **an intervening change in the controlling law**, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id*. at 1332 (emphasis added). Further, "[i]t is well[ ]settled that changes in decisional law which occur during litigation will be applied to cases pending on appeal." *Pa. State Police v. Workers' Comp. Appeal Bd. (Bushta)*, 149 A.3d 118, 121 (Pa. Cmwlth. 2016), *aff'd*, 184 A.3d 958 (Pa. 2018) (quoting *Cipic v. Workers' Comp. Appeal Bd. (Consolidation Coal Co.)*, 693 A.2d 1009, 1011 (Pa. Cmwlth. 1997) (emphasis omitted)).

The Pennsylvania Supreme Court's *Highspire II* decision effected a change in the controlling law from the *Archer* Court's reasoning. Unlike *Archer*, which prohibits the Secretary's educational merit analysis from considering a discrete student population, *Highspire II* requires the Secretary to "take a holistic approach, looking not just at the *students* who would be transferred, but at the *students* in each of the affected school districts." *Highspire II,* 260 A.3d at 941 (emphasis added). Further, *Highspire II* holds that "[i]n those petitions where financial conditions may play a role in the Secretary's assessment of educational merit, there should be no constraints on his or her ability to take them into consideration." *Id*. This Court's directive in *Archer* is irreconcilable with our Supreme Court's mandate in *Highspire II*. Accordingly, this Court concludes that the Secretary should have rendered his Opinion in accordance with the law as described in *Highspire II*.

18

## B. Secretary's Analysis of the Evidence

Somerset next contends that the Secretary, on remand from this Court's Order, erred by merely reciting (without analyzing) the evidence that the *Archer* Court considered possibly relevant, and improperly deferred to the *Archer* Court's findings. Specifically, Somerset argues:

> The Secretary's report . . . conflates [the] Commonwealth Court's identification and discussion of evidence of educational merits in the record to findings of fact, when the statute clearly requires the Secretary's independent educational merit determination. There is no basis for the Secretary to assert that his authority and responsibility to act under the terms of applicable Pennsylvania [l]aw can be abrogated by the Commonwealth Court. The Secretary's refusal to conduct the inquiry and determination imposed upon the Department . . . is entirely unjustified. Due process and common sense require the Secretary's full and adequate review and action.

Somerset Br. at 20.

The Pennsylvania Supreme Court declared in *Highspire II*:

> **[W]eighing of interests are not in the purview of the Commonwealth Court**. . . . **[I]t is for the <u>Secretary</u> to weigh [] factor[s] in determining the educational merits** of the petition. In doing so, students in all of the affected school districts over time are part of the analysis. . . . It is the **Secretary, applying his "expert knowledge in the field of education" through the lens of the [] School Code, who makes the determination of educational merits** in light of the factors.

*Highspire II,* 260 A.3d at 940-41 (bold and underline emphasis added).

By complying with this Court's directives in *Archer*, the Secretary applied a more constrained approach to weighing educational merits of the Territory's proposed transfer than was his role as later prescribed in *Highspire II* -

19

> where financial conditions may play a role in the Secretary's assessment of educational merit, there should be **no constraints** on his or her ability to take them into consideration. . . . [I]n reviewing a petition for educational merit, the Secretary must take **a holistic approach**, looking not just at the *students* who would be transferred, but at the *students* in **each of the affected school districts**.

*Highspire II*, 260 A.3d at 941 (bold and italic emphasis added; citation and footnote omitted). Consistent therewith, the Secretary should have considered the entirety of the impact on **all** of the affected school districts and weighed that impact on Somerset's **students** and on Rockwood's **students** and those students in the proposed independent district (including consideration of the current absence of any such students and the lack of any record evidence that the student population will likely increase in the near future, or record evidence of how the change will impact Rockwood's students' education). Accordingly, as stated above, because *Highspire II* was decided after *Archer* and was decided by our Supreme Court, the Secretary should have applied the law as the Pennsylvania Supreme Court declared in *Highspire II*.[12]

    For all of the above reasons, the Secretary's Order is vacated, and the matter is remanded to the Secretary for further proceedings consistent with this Opinion.[13]

 

 

                                          _____

                                          ANNE E. COVEY, Judge

---

[12] This Court notes that the Secretary's decision reflects that the Secretary did more than merely recite the evidence that the *Archer* Court considered relevant and analyzed the evidence. Nonetheless, in weighing the evidence, it is clear that the Secretary relied, in large part, on the *Archer* Court's review, and the *Archer* Court's constraints on such review. Given the *Highspire II* decision, the Secretary must conduct his own independent review as informed by *Highspire II*.

[13] Given this Court's disposition of the first two issues, it does not reach Somerset's remaining issues on appeal.

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Somerset Area School District,           :
                 Petitioner                  :
                                             :
          v.                          :
                                             :

Rockwood Area School District,           :
Joseph E. Archer, Nancy J. Bonati,       :
Christopher C. Bosworth, Deborah A.      :
Bosworth, Belita J. Brown, Stephen C.    :
Brown, Deborah A. Cunningham, Paul       :
V. Cunningham, Candace DiMarco,          :
Ross F. DiMarco Jr., Janeen Dupre,       :
Karen A. Farmerie, Wilson J.             :
Farmerie, David A. Fetchko, Mary         :
Ellen Fetchko, Clifford J. Forrest,      :
Tracy L. Forrest, Gary D. Gadley,        :
Annette D. Ganassi, Hemlock Property     :
LLC, Georgia C. Hernandez, Robert        :
M. Hernandez, Martha E. Hildebrandt,     :
Mark J. Hileman, Rebecca L. Hileman,     :
James A. Nassif, Qualified Personal      :
Residence Trust, Susan A. Jurik, Kurt J. :
Lesker III, William J. Lloyd, David P.   :
Mendis, Lisa B. Mendis, Joseph C.        :
Metzgar, Lynette E. Metzgar, Erin        :
Morris, Michael A. Morris, Netco Inc.,   :
Mary Jo Ochson, John C. Prentice,        :
Douglas Keith Rosetti, Ronald T.         :
Rosetti, Seven Springs Farm, Inc.,       :
Matthew Tarosky, Three Rivers            :
Enterprises Inc., David A. Tonnies,      :
Cynthia G. Urgo, Donald J. Urgo,         :

Virginia's Pheasant Run Limited                :
Partnership, David A. Webber, Lorie A.  :
Webber, Harold Wiegel, Steven H.          :
Wiegel, James P. Wilhelm, Paige M.        :
Wilhelm, Jackie Wolfe, Jacquelyn K.       :
Wolfe, Tim Wolfe, and Timothy W.         :
Wolfe (Pennsylvania Department of        :
Education),                                            :      No. 175 C.D. 2022
                          Respondents              :

## O R D E R

AND NOW, this 5th day of May, 2023, the Secretary of Education's (Secretary) February 4, 2022 order is vacated. This matter is REMANDED to the Secretary for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge